UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBIN A. MOORE, JR.,

                                    Plaintiff,

                                                                    6:22-CV-1125
v.                                                                  (TJM/TWD)

REGINA A. RINALDI, STATE OF NEW YORK,

                                    Defendants.
_____

APPEARANCES:

ROBIN A. MOORE, JR.
Plaintiff, *pro se*
4411
Oneida County Correctional Facility
6075 Judd Road
Oriskany, NY 13424


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

        The Clerk has sent the Court a civil rights complaint filed by Robin A. Moore, Jr.

("Plaintiff") pursuant to 42 U.S.C. § 1983.  (Dkt. Nos. 1, 1-1.[1])  Plaintiff has also filed a motion

to proceed *in forma pauperis* ("IFP").  (Dkt. No. 4.)  For the following reasons, the Court grants

Plaintiff's IFP application for purposes of initial review and recommends dismissal of the

Complaint in its entirety and without leave to amend.

_____

[1]  Plaintiff filed two complaints, which the Court considers together.  (Dkt. Nos. 1, 1-1).

I.      **IFP APPLICATION**

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  (Dkt. Nos. 4, 5.)  After reviewing Plaintiff's application, this Court finds he is financially eligible for IFP status.  Therefore, Plaintiff's IFP application is granted for purposes of initial review.

II.     **BACKGROUND**

Plaintiff initiated this action against Regina A. Rinaldi, a State Administrative Law Judge, and the State of New York (collectively, "Defendants") on October 31, 2022.  (Dkt. Nos. 1, 1-1.)  Plaintiff alleges that on July 29, 2022, while at his final parole hearing, Judge Rinaldi "failed to uphold her duty" by denying Plaintiff new counsel after hearing Plaintiff's attorney, Mr. Rettinger,[2] make certain comments to Plaintiff, including telling Plaintiff to shut up; saying Plaintiff sounded like "Johnny Cohern"[3] raised from the dead; saying Plaintiff sounded someone who takes psychiatric medication; and saying Plaintiff sounded like a psychiatric patient.  (Dkt. No. 1 at 3; Dkt. No. 1-1 at 4.)  Plaintiff claims that due to all this "negligent" behavior and the "racist slur[]", he has suffered "great" mental anguish which is affecting his PTSD, anxiety, and depression and which requires him to see his doctor more.  *Id.*

Plaintiff asserts multiple causes of action against Judge Rinaldi and the State of New York: (1) Judge Rinaldi did not say anything when Mr. Rettinger told Plaintiff to shut up; (2) did not correct Mr. Rettinger for telling him to shut up and that he sounded like a psych patient; (3) failed to do her duty to rule "on such matters as see [sic] properly fit"; (4) violated his First

---

[2]  Plaintiff's claims against Mr. Rettinger are the subject of another action filed in this District. *See Moore v. Reittinger*, et al No. 6:22-cv-1083 (LEK/ATB), ECF Dkt. No. 6 (recommending dismissing of the complaint in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim).

[3]  It is unclear who Plaintiff is referring to in the complaint.  Given the context, the intended reference may be to noted criminal defense attorney Johnnie Cochran.

Amendment rights; (5) violated his "free exercise of legal argument"; and (6) violated ethics and code of professional conduct. (Dkt. No. 1 at 3; Dkt. No. 1-1 at 4-5.) Plaintiff requests the termination of Judge Rinaldi and $2.5 million in damages. (Dkt. No. 1 at 4; Dkt. No. 1-1 at 5.)

## III.   SUFFICIENCY OF THE COMPLAINT

### A.   Legal Standard

This Court must conduct an initial review of complaints filed IFP, and "complaints in which a prisoner[4] seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(e)(2)(B) (governing complaints filed IFP); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government). When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999)) (applying Section 1915A).

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."

---

[4] Plaintiff is a "prisoner" as that term is used in 28 U.S.C. § 1915A(a). (*See* Dkt. No. 5; *see also* 28 U.S.C. § 1915A(c) (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").)

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal citations and quotations omitted).  "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

### B.     Discussion

Plaintiff purports to bring this action pursuant to 42 U.S.C. 1983.  (Dkt. Nos. 1, 1-1.)  To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" *Rae v. Cty. of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F. 3d 51, 53 (2d Cir. 1999)).

### 1.   Claims Against Defendant Judge Rinaldi

It is well-settled judges are absolutely immune from suit for damages for judicial acts performed in their judicial capacities.  *Mireles*, 502 U.S. at 11.  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  Absolute immunity protects judges for their judicial acts, even when such acts "are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).  This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation[.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).  This is true however erroneous an act may have been and however injurious its consequences were to the plaintiff.  *Id*.

Although the allegations in the Complaint do not clarify the context of Plaintiff's claims, Plaintiff appears to complain of Judge Rinaldi's conduct while performing her duties as a State Administrative Law Judge.  (*See generally* Dkt. Nos. 1, 1-1.)  Claims against judges are barred by the doctrine of judicial immunity.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Here, Plaintiff claims Judge Rinaldi failed to act, thus violating his rights, during his final parole hearing.  (Dkt. No. 1 at 3; Dkt. No. 1-1 at 4-5.)  Plaintiff's allegations against Judge Rinaldi

clearly relate to actions that are judicial in nature and, therefore, she is entitled to judicial immunity. *See, e.g.*, *Hardy-Graham v. Southampton Just. Ct.*, No. 20-CV-0981(JS) (SIL), 2021 WL 260102, at *5 (E.D.N.Y. Jan. 25, 2021) (dismissing claims against a New York State court judge on initial review because of judicial immunity); *United States v. Bommer*, No. 1:19-CV-00823 EAW, 2020 WL 1963159, at *4 (W.D.N.Y. Apr. 21, 2020) (same). Thus, Plaintiff's Section 1983 claims against Judge Rinaldi fail as a matter of law.

Consequently, the Court recommends that all claims against Judge Rinaldi be dismissed with prejudice as Plaintiff seeks relief from a defendant immune from suit under Section 1983.

### 2. Claims Against Defendant State of New York

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and New York State has not waived its immunity from suit on the type of claims asserted in the Complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996).

6

Accordingly, the Court recommends that all claims against the State of New York should be dismissed with prejudice as Plaintiff seeks relief from a defendant immune from suit under Section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see also Dicks v. Binding Together, Inc.*, No. 03 CIV 7411, 2007 WL 1462217, at *5 (S.D.N.Y. May 18, 2007) (dismissing the plaintiff's claims for prospective injunctive relief against the State of New York as barred by the Eleventh Amendment) *aff'd in part sub nom. Dicks v. Chow*, 382 Fed. App'x 28 (2d Cir. 2010); *see also deBroize v. New York State*, No. 99-CV-0904 (NAM), 2001 WL 1217192, at *3 (N.D.N.Y. Sept. 21, 2001) (dismissing ADA claims against State of New York).

### C.     Opportunity to Amend

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Here, better pleading could not cure the deficiencies described above. Therefore, the Court recommends dismissal without leave to amend.

7

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 4) is **GRANTED** only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith per 28 U.S.C. § 1915(a)(3); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. Nos. 1, 1-1) be **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated:  December 13, 2022
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)

2021 WL 4472667

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se,
Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J.
SULLIVAN, Circuit Judges, JOHN G. KOELTL, District
Judge. *

* Judge John G. Koeltl of the United States District
Court for the Southern District of New York, sitting
by designation.

**SUMMARY ORDER**

Appellant Doran Allen, proceeding pro se, sued Scott M.
Stringer, in his capacity as New York City Comptroller, and
the unnamed warden of the Rikers Island Anna M. Kross
Center ("AMKC") under 42 U.S.C. § 1983 for violations of
the Due Process Clause of the Fourteenth Amendment. Allen
alleges that, while he was detained at AMKC, a corrections
officer refused to help him carry breakfast trays, causing him
to slip and fall on broken stairs, injuring himself. The district
court dismissed the complaint sua sponte for failure to state a
claim. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on
appeal.

We review de novo a district court's sua sponte dismissal of
a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns,*
606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district
court must dismiss a complaint filed in forma pauperis if
it determines that the action "(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To
avoid dismissal, a complaint must plead "enough facts to
state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft
v. Iqbal,* 556 U.S. 662, 678 (2009) (recognizing that "legal
conclusions" and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do
not suffice" to plead a viable claim). Pro se submissions are
reviewed with "special solicitude," and "must be construed
liberally and interpreted to raise the strongest arguments that
they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d
471, 474–75 (2d Cir. 2006) (internal quotation marks and
emphasis omitted).

Conditions-of-confinement claims brought by pretrial
detainees are analyzed under the Fourteenth Amendment's
Due Process clause. *Darnell v. Pineiro,* 849 F.3d 17, 29
(2d Cir. 2017). To state such a claim, a plaintiff must
satisfy both an objective prong and a subjective prong.
*See id.* The objective prong requires "showing that the
challenged conditions were sufficiently serious to constitute
objective deprivations of the right to due process," while
the subjective prong requires "showing that [an] officer
acted with at least deliberate indifference to the challenged
conditions." *Id.* (internal quotation marks omitted). If a
conditions-of-confinement claim is predicated on an unsafe
condition, a court will analyze "whether society considers
the risk that the prisoner complains of to be so grave that it
violates contemporary standards of decency to expose *anyone*
unwillingly to such a risk." *Helling v. McKinney,* 509 U.S. 25,
36 (1993).

Allen alleges that he slipped or tripped on broken stairs,
causing him to fall. But while the existence of broken stairs
could be deemed to constitute negligence on the part of
the prison, broken stairs alone cannot satisfy the objective
prong of a conditions-of-confinement claim. *See McCray v.
Lee,* 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the
defendant's complaint alleging unconstitutional conditions of

2021 WL 4472667

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling,* 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell,* 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 260102
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Andrew HARDY-GRAHAM, Plaintiff,

v.

SOUTHAMPTON JUSTICE COURT, Southampton
Town Police Dept., Jane Doe, Eileen Powers, John Doe 2,
Keith Lawston, Barbara Wilson, John Doe, Defendants.

20-CV-0981(JS)(SIL)
|
Signed 01/25/2021

**Attorneys and Law Firms**

For Plaintiff: Andrew Hardy-Graham, 836 Davis Avenue,
Uniondale, New York 11553.

For Defendants: No appearances.

MEMORANDUM AND ORDER

SEYBERT, District Judge:

**\*1**  Before the Court is the Second Amended Complaint
(ECF No. 9; hereafter, the "SAC") filed in forma pauperis
by pro se plaintiff Andrew Hardy-Graham ("Plaintiff")
purporting to allege civil rights violations pursuant to 42
U.S.C. § 1983 ("Section 1983") against the Southampton
Justice Court (the "SJ Court"), the Southampton Town Police
Department (the "Police Department"), Eileen Powers, Esq.
("Powers"), Keith Lawston ("Officer Lawston"), Barbara
Wilson ("Justice Wilson"), and three unidentified individuals
who are alleged to be "police or court officers" ("John Doe 1",
"John Doe 2", "Jane Doe", and collectively, "Defendants").
Upon review of the SAC in accordance with the in forma
pauperis statute, 28 U.S.C. § 1915, the Court finds that
Plaintiff has failed to allege a plausible claim for relief as
against the SJ Court, the Police Department, Justice Wilson,
Powers, and Jane Doe. Accordingly, the SAC is DISMISSED
as against these Defendants pursuant to 28 U.S.C. § 1915(e)
(2)(B). Though attenuated, Plaintiff's remaining excessive
force claims against Lawston and John Does 1 and 2 shall
proceed and the Court ORDERS service of the Summonses
and the SAC by the United States Marshals Service (USMS)
as set forth herein.

BACKGROUND

By Memorandum and Order dated May 15, 2020, the
Court granted Plaintiff's application to proceed in forma
pauperis and dismissed Plaintiff's Amended Complaint
without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and
Federal Rule of Civil Procedure 8. (See Memo & Order, ECF
No. 8.) Plaintiff was granted leave to file a SAC within thirty
(30) days and, on June 15, 2020, Plaintiff timely did so. (See
SAC, ECF No. 9.) Because Plaintiff largely complained of
events alleged to have occurred in 2014, the Court ordered
Plaintiff to show cause (hereafter, "OSC") why his claims
arising from events alleged to have occurred during February
2014 are not barred by the applicable statute of limitations.
(See OSC, ECF No. 10.) On September 21, 2020, Plaintiff
filed an unsigned response to the OSC that barely addressed
the timeliness of his claims. (See Response, ECF No. 11.)
Rather, Plaintiff largely argued the merits of his claims. (See
id.)

In an abundance of caution and in light of Plaintiff's pro se
status, the Court issued another Order to Show Cause whereby
Plaintiff was "afforded a final opportunity to properly
respond ... in writing, by October 30, 2020, why his Section
1983 claims are not barred by the applicable three-year
statute of limitations." (Sept. 25, 2020 Elec. Order to Show
Cause; hereafter, "Electronic OSC.") Plaintiff's response to
the Electronic OSC was dated October 29, 2021 and was
received by the Court on November 2, 2020; it has been
accepted for filing. (See Reply, ECF No. 12.)

The Court finds that, at this early stage in the proceedings
and though barely, Plaintiff has demonstrated that he acted
with reasonable diligence during the time period he seeks
to be tolled and that his circumstances are so extraordinary
that the equitable tolling doctrine should apply. See Zerilli-
Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d
Cir. 2003) (internal citations and quotation marks omitted).
Specifically, Plaintiff reports that his untimely filing was a
result of the conditions of his confinement at the Suffolk
County Correctional Facility, as well as his homelessness,
addiction, and recovery efforts. (See Reply, generally, and
at 2-3.) Plaintiff describes that corrections officers "did
not allow complaints and used fear to keep inmates from
trying to complain." (Id. at 3.) He also explains that his
"appeal paperwork was damaged in Suffolk County jail
transfers and cell tossing." (Id.) Further, Plaintiff states that
he was homeless after his release from incarceration and he

"prioritized survival over recovering what was lost. I lost personal items and release paperwork." (Id.) According to Plaintiff, once he "recovered some stability" in his sobriety and the necessities of living, he focused on his claims. (Id. at 5.) Thus, the Court finds that Plaintiff's response to the Electronic OSC sufficiently demonstrates a basis for equitable tolling of the statute of limitations. [1] Accordingly, the Court next considers the merits of Plaintiff's claims in accordance with the screening provision of 28 U.S.C. § 1915(e)(2)(B).

[1]      However, this finding is without prejudice to the further adjudication of the timeliness of Plaintiff's claims should the Defendants raise the statute of limitations as an affirmative defense.

### THE SECOND AMENDED COMPLAINT

**\*2**   Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 to redress the alleged deprivation of his Sixth, Eighth, and Fourteenth Amendment rights, as well as several sections under Title 18 of the United States Code, specifically 18 U.S.C. §§ 1510, 1512, and 1519. (SAC, ¶ II.A. [2])

[2]      Plaintiff also lists 28 U.S.C §§ 455, 1332, 1343, 1361, and 1491; "C.P.L.P 213", "Prisoner Reform Laws", and "466 U.S. 668."

According to his SAC, in February 2014, Plaintiff was arrested after breaking the windshield of his then-girlfriend's car. (SAC at 6.) Plaintiff was "detained and held overnight" by the Police Department. (Id.) Plaintiff was then taken by Southampton Town police to the SJ Court for arraignment on criminal mischief charges. (See id.) He describes respectfully "request[ing] to use the bathroom multiple times" to Jane Doe and to Officer Lawston. (Id.) Jane Doe allegedly advised Plaintiff that he could not use the restroom if he was next to be called for Court and Officer Lawston just questioned why Plaintiff did not go before leaving his cell for Court. (See id. at 6-7.) Plaintiff alleges that he had consumed "two oranges juices" necessitating his need to use the restroom. (Id.) He claims hearing a toilet flush and again asking Officer Lawston to use the bathroom since it was "right there." (Id. at 7.) Plaintiff contends that while Officer Lawston told him to go, when he attempted to do so, Officer Lawston "pulled" Plaintiff and physically kept Plaintiff from using the restroom. (Id.)

According to Plaintiff, he then "jump[ed] on top of the seating arrangement ... protesting ... [that he] will not sit until he goes to the bathroom or until Defendant Keith Lawston attempts to trip (Pl[aintiff] ) from 3 feet above ground where (Pl[aintiff] ) protested." (Id.) Plaintiff describes that he "gave up the protest but did not sit" and instead "lung[ed] for the bathroom" when Officer Lawston "put[ ] an elbow to [Plaintiff's] throat." (Id.) Officer Lawston allegedly "trips both parties" and "propel[led] [Plaintiff] towards the exit, not the restroom." (Id.)

Plaintiff asserts that John Doe entered and, after consultation with Officer Lawston, accused Plaintiff of "multiple charges" including attempted escape and assaulting an officer. (Id.) Plaintiff also claims that John Doe "ignored" his request to use the restroom and, instead, restrained Plaintiff. (Id. at 7-8.) Plaintiff contends that, thereafter, he was placed face-down on the floor, with an unknown officer twisting Plaintiff's arm until it hurt and digging his knee into Plaintiff's back. (See id. at 8.) Plaintiff alleges that Jane Doe then pointed a taser at him and threatened to taser him because he was yelling and kicking. (See id.)

Plaintiff was then taken back to the Police Department where he was placed on suicide watch after Plaintiff said "I should kill myself." (Id.) Claiming to have used that phrase as a "figure of speech," Plaintiff further contends he has never been suicidal or violent. (Id.) The following day, Plaintiff was returned to the SJ Court for arraignment where he again requested to use the bathroom. (See id.) Plaintiff claims that he "possibl[y] [has a] small bladder" and his request was ignored by John Doe 2. (See id.) When Jane Doe called Plaintiff's name, Plaintiff requested to use the bathroom, to which Jane Doe acquiesced and for which Plaintiff was grateful and relieved. (See id.)

**\*3**   Next, Plaintiff complains about his court-appointed attorney, Powers, claiming she called him an "asshole" and has a reputation, as reported in the newspapers, for representing "a rape/murder[er] Mexican." (Id. at 8-9.) Therefore, Plaintiff requested that Powers be relieved from her representation of him. (See id.) Justice Wilson did not permit Powers to be relieved; thus, Plaintiff asserts that Powers defended him without his consent. (See id. at 8-9.)

Finally, Plaintiff alleges that the "Suffolk County Jail does not allow timely visits to the law library", "has no grievance policy", and "flipped cells destroying important documents, tainting pro se efforts." (Id. at 9.)

As a result of the foregoing, Plaintiff claims to have suffered "monetary and mental damages" for which he seeks to recover a damages award in the total sum of $1 million. (SAC, ¶II.B(3), ¶IV.)

### DISCUSSION

Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

A. Claims Brought Pursuant to 18 U.S.C. §§ 1510, 1512, and 1519

Plaintiff seeks to pursue claims for relief pursuant to three sections of Title 18 of the United States Code, specifically 18 U.S.C. §§ 1510, 1512, and 1519. (See SAC, ¶II.A.) However, these sections are criminal statutes that proscribe the obstruction of justice and do not provide for a private right of action. See Arthur Andersen LLP v. United States, 544 U.S. 696, 703, 125 S. Ct. 2129, 2134 (2005) ("Chapter 73 of Title 18 of the United States Code provides criminal sanctions for those who obstruct justice."); see also LoPorto v. County of Rensselaer, No. 15-CV-0866, 2018 WL 4565768, at *16 (N.D.N.Y. Sept. 24, 2018) ("[T]here is no indication that §

1510 creates an individual right that can be enforced ...."); Hilow v. Rome City Sch. Dist., No. 14-CV-288, 2015 WL 893050, at *8 (N.D.N.Y. Mar. 2, 2015) (finding 18 U.S.C. § 1512 does not contain a private right of action); Kalola v. Int'l Bus. Machines Corp., No. 19-CV-9900, 2019 WL 6879307, at *3 (S.D.N.Y. Dec. 16, 2019) ("[N]o private right of action exists under the criminal statutes enumerated above", including 18 U.S.C. § 1519 (citing Bruin v. White, 2019 WL 4889270, at *4 (W.D. Ky. Oct. 3, 2019) (finding no private cause of action under 18 U.S.C. § 1519)). Accordingly, because there is no private right of action under these criminal statutes, these claims are implausible, warranting their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

B. Claims Brought Pursuant to 28 U.S.C §§ 455, 1332, 1343, 1361, and 1491; "C.P.L.P 213", "Prisoner Reform Laws", and "466 U.S. 668" [3]

> Insofar as Plaintiff also includes "C.P.L.P. 213", "Prisoner Reform Laws", and "466 U.S. 668", none of these cites provide a cause of action or claim for relief. It appears that Plaintiff intended to cite to N.Y. C.P.L.R. § 213 in support of his mistaken belief that the statute of limitations applicable to his claims is six years. Additionally, Plaintiff's vague reference to unidentified "Prison Reform Laws" and his citation to Strickland v. Washington, 466 U.S. 668 (1984), do not provide independent causes of action.

**\*4** Plaintiff's claims brought pursuant to 28 U.S.C. §§ 455, 1332, 1343, 1361, and 1491 fare no better. Each of these statutes govern procedure in the federal district courts and none of them provide a separate claim for relief. Section 455 of Title 28 of the United States Code governs the disqualification of a federal justice, judge, or magistrate judge "in any proceeding in which his impartiality might reasonably be question." 28 U.S.C. § 455(a). Section 1332 of Title 28 of the United States Code governs the jurisdiction of the federal district courts and requires that the parties be of diverse citizenship and that the amount in controversy exceeds the sum or value of $75,000. See 28 U.S.C. § 1332(a)(1). Section 1343 of Title 28 of the United States Code provides that federal "district courts shall have original jurisdiction" over civil rights claims, including the right to vote. See 28 U.S.C. § 1343(a). Section 1361 of Title 28 of the United States Code provides that the federal "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of

the United States or any agency thereof to perform a duty owed to the plaintiff." Finally, Section 1491 of Title 28 of the United States Code, known as the Tucker Act, provides "a limited waiver of sovereign immunity and establish[es] federal jurisdiction over certain non-tort claims against the United States." Odonoghue v. U.S. Dep't of the Army, No. 12-CV-4959, 2012 WL 5505921, at *1 (E.D.N.Y. Nov. 13, 2012).

Because each of these statutes are procedural in nature, and do not provide a substantive cause of action or a right to relief, Plaintiff's damages claims arising from these statutes are implausible, warranting their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

C. Claims Brought Pursuant to Section 1983

Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356, 361, 132 S. Ct. 1497, 1501 (2012). To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Rodriguez v. Shoprite Supermarket, No. 19-CV-6565, 2020 WL 1875291, at *2 (E.D.N.Y. Apr. 15, 2020) (internal quotation marks and citation omitted); see also Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (same) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

1. Claims Against the SJ Court

To the extent that Plaintiff seeks to impose Section 1983 liability on the SJ Court, such claims are implausible. First, it is well-established that a Section 1983 action may only be maintained against a "person" who has deprived another of

rights under the "Constitution and Laws." See Dames v. de Blasio, No. 20-CV-0226, 2020 WL 3869724, at *2 (S.D.N.Y. July 8, 2020) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (state is not a "person" for the purpose of § 1983 claims)); Zuckerman v. Appellate Div., Second Dep't Supreme Court, 421 F.2d 625, 626 (2d Cir. 1970) (court not a "person" within the meaning of 42 U.S.C. § 1983).

Second, because the "the Southampton Village Justice Court is part of the New York State Unified Court System", see Davis v. County of Suffolk, No. 18-CV-0303, 2020 WL 7699919, at *12 (E.D.N.Y. Oct. 30, 2020), report and recommendation adopted, 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020) (citing Ceparano v. Southampton Justice Court, No. 09-CV-0423, 2010 WL 11527157, at *12 (E.D.N.Y. Mar. 22, 2010), report and recommendation adopted, 2010 WL 11527158 (E.D.N.Y. May 12, 2010), aff'd, 404 F. App'x 537 (2d Cir. 2011)), Plaintiff's claims against the SJ Court are barred by the Eleventh Amendment. It is well-established that "[s]tates and their agencies possess sovereign immunity, as memorialized in the Eleventh Amendment." Ojeda v. Mendez, No. 20-CV-3910, 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). "The Eleventh Amendment bars suits for damages against states and state agencies absent a state's consent or a valid abrogation of the state's sovereign immunity by an act of Congress." Ojeda, 2021 WL 66265, at *3 (citing Pennhurst, 465 U.S. at 99-100). Here, Plaintiff has not identified any waiver of sovereign immunity that would permit him to bring suit against the SJ Court, nor could he given that " 'New York State has not waived its sovereign immunity from Section 1983 claims, nor did Congress override that immunity by enacting Section 1983.' " Ojeda, 2021 WL 66265, at *3 (quoting Nolan v. Cuomo, No. 11-CV-5827, 2013 WL 168674, at *7 (E.D.N.Y. Jan. 16, 2013)) (internal citations omitted)). Accordingly, as they are barred by the Eleventh Amendment, Plaintiff's Section 1983 claims against the SJ Court are DISMISSED pursuant 28 U.S.C. § 1915(e)(2)(B).

2. Claims Against Justice Wilson

**\*5** Plaintiff also names Justice Wilson as a Defendant. Because Justice Wilson is a state actor sued in her official capacity, Plaintiff's Section 1983 claims for damages against her are likewise barred by the Eleventh Amendment. See supra at 13-14; see also London v. Nassau County Dist. Attorney's Office, No. 20-CV-3988, 2020 WL 7699644, at *7

(E.D.N.Y. Dec. 28, 2020) ("Eleventh Amendment immunity bars Plaintiff's claims for damages against the State of New York and the individual state Defendants in their official capacities).

Moreover, Justice Wilson is absolutely immune from suit.

> "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (citation omitted).

Guarnieri v. Kelley, No. 19-CV-0318, 2019 WL 1486688, at *3 (N.D.N.Y. Apr. 4, 2019), report and recommendation adopted, 2019 WL 5596468 (N.D.N.Y. Oct. 30, 2019), appeal dismissed (Jan. 17, 2020).

In addition, the 1996 Congressional amendments to Section 1983 bar injunctive relief and provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." See Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, § 309(c), 110 Stat. 3847, 3853 (1996); see also Montero v. Travis, 171 F.3d 757 (2d Cir. 1999). Therefore, unless a judge has "acted either beyond the judge's judicial capacity, or in the complete absence of all jurisdiction", he or she will be immune from all forms of suit. Guarnieri, 2019 WL 1486688, at *3 (internal quotation marks and citation omitted).

Here, Plaintiff alleges only that Justice Wilson denied his request to have his court-appointed attorney, Powers, relieved from representing him during the preliminary proceedings in the underlying state court criminal case. (See SAC at 8-9.) Yet, there can be no dispute that deciding motions during a court proceeding is a purely judicial function. Further, Plaintiff has not alleged that Justice Wilson acted beyond the scope of her authority, nor could he, given that the SJ Court had jurisdiction over the underlying criminal case. See N.Y. Crim. Proc. Law §§ 10.30(1)-(2) (local criminal courts possess jurisdiction over all offenses other than felonies). Accordingly, Plaintiff's claims against Justice Wilson are barred by absolute judicial immunity compelling their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B). See also Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

### 3. Claims Against the Police Department

**\*6** Plaintiff's claims against the Police Department are implausible because it is an administrative arm of the Town of Southampton and thus lacks the capacity to be sued as a separate entity. See, e.g., Ayers v. Suffolk County Dist. Attorney Office Inc., No. 20-CV-1192, 2020 WL 6363898, at *3 (E.D.N.Y. Oct. 28, 2020) (dismissing claims against the Southampton Town Police Department because, as "an arm of the Southampton Town government", it "cannot sue or be sued") (citing Southampton Town Code §§ 19-1, 19-3; Arum v. Miller, 331 F. Supp. 2d 99, 107 (E.D.N.Y. 2004) ("[U]nder New York law, a town police department is not a suable entity." (citation omitted)); Kiernan v. Town of Southampton, No. 14-CV-1831, 2015 WL 1258309, at *10 (E.D.N.Y. Mar. 17, 2015)).

### 4. Purported Claims Against the Town of Southampton

Given Plaintiff's pro se status and affording his Complaint a liberal construction, the Court has considered whether Plaintiff has alleged a plausible Section 1983 claim against the municipality, the Town of Southampton, and finds that he has not for the reasons that follow.

It is well-established that a municipality such as Southampton cannot be held liable under § 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of N.Y. City, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978); Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020) ("Monell expressly prohibits respondeat superior liability for municipalities.")(citing Monell, 436 U.S. at 691; Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (additional citation omitted)); Ayers, 2020 WL 6363898, *3. To prevail on a Section 1983 claim against a municipality, a plaintiff must show that "action pursuant to official municipal policy" caused the alleged constitutional injury." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359 (2011)); see also Monell, 436 U.S. at 690-91. "[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91 (internal citation omitted); City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S. Ct. 915 (1988) (plurality

opinion) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"The elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Agosto, 982 F.3d at 97. To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, see Connick, 563 U.S. at 60-61; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights, see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004); Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000); (3) a practice "so persistent and widespread as to practically have the force of law," Connick, 563 U. S. at 61; see also Green v. City of N.Y., 465 F.3d 65, 80 (2d Cir. 2006), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates." Cash, 654 F.3d at 334 (internal quotation marks and citations omitted); see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009) (holding a municipal custom may be found "when 'faced with a pattern of misconduct, [the municipality] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions' ") (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (second alteration in original)).

**\*7** Here, even affording the SAC a liberal construction, Plaintiff has not alleged that the challenged conduct was taken pursuant to a municipal policy or custom. (See SAC, generally.) Nor are there any factual allegations from which the Court could reasonably construe a plausible Section 1983 cause of action against the Town of Southampton.

### 5. Claims Against Powers

Plaintiff also seeks to impose Section 1983 liability on his court-appointed defense attorney, Powers, in the underlying state court criminal case. However, court-appointed "attorneys are generally not 'state actors' for purposes of § 1983." O'Donoghue v. U.S. Soc. Sec. Admin.,

828 F. App'x 784, 787 (2d Cir. 2020) (citing Rodriguez v. Weprin, 116 F.3d 62, 65–66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act under color of state law and therefore are not subject to suit under 42 U.S.C. § 1983.")); see also Pappas v. Lorintz, No. 19-3103, —— F. App'x ——, 2020 WL 6066083, at \*3 (2d Cir. Oct. 15, 2020) (affirming dismissal of constitutional claims against a private lawyer because lawyer was not a state actor, not acting under color of state law, and not subject to a § 1983 claim) (citing McGugan v. Aldana-Bernier, 752 F.3d 224, 229 (2d Cir. 2014)). Accordingly, because Powers is not a state actor, Plaintiff's Section 1983 claims against her are not plausible, compelling their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### 6. Claims Against Officer Lawston and the John/Jane Does

Plaintiff complains that Officer Lawston, Jane Doe, and John Doe 2 denied his requests to use the restroom while Plaintiff was awaiting his arraignment at the SJ Court. (See SAC at 6-8.) After repeated requests, Officer Lawston allegedly said Plaintiff could use the restroom and, as Plaintiff proceeded to do so, he was "pulled by Lawston" and not permitted to use the restroom. (Id. at 7.) Instead, Plaintiff was accused of trying to escape. (See id. at 7-8.) Plaintiff protested by jumping on top of the seating arrangement and refusing to come down until he was permitted to use the restroom. (See id.) He eventually "gave up the protest but would not sit." (Id.) Jane Doe is alleged to have pointed a taser at Plaintiff, threatening to use it on him. (See id. at 8.) Plaintiff also describes that a John Doe Defendant and Officer Lawston used "unnecessary roughness" by twisting his arm and digging a knee into his back. (See id.) Although Plaintiff alleges that he was in "pain", he does not claim any injuries other than "mental damages" and "depression". (Id. at 8, 11.)

"Courts in this district have consistently found that the temporary deprivation of the right to use the toilet, absent serious physical harm or serious risk of contamination, does not rise to the level of an objective constitutional violation." Cooper v. Marrero, No. 11-CV-9260, 2013 WL 2529723, at \*4 (S.D.N.Y. June 11, 2013) (collecting cases: Walker v. Dep't of Corr. Serv., No. 11-CV-0993, 2012 WL 527210, at \*2 (S.D.N.Y. Feb. 14, 2012) (no constitutional violation where prisoner was denied right to use bathroom for 80 minutes); Jones v. Marshall, No. 08-CV-0562, 2010 WL 234990, at \*3 (S.D.N.Y. Jan. 19, 2010) (same, 90 minutes);

Whitted v. Lazerson, No. 96-CV-2746, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (no constitutional violation where prisoner had to wait 90 minutes to use bathroom and urinated and defecated in his pants); Odom v. Keane, No. 95-CV-9941, 1997 WL 576088, at *4–5 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, J.) (no constitutional violation where plaintiff was deprived of a working toilet for 10 hours, nor where he could not flush his toilet between 9 p.m. and 7 a.m. for a period of several months)). Here, Plaintiff's sparse allegations do not allege a constitutional deprivation regarding his delayed access to the restroom. Indeed, although Plaintiff alleges that his initial requests for restroom access were denied, he expressly alleged that "he did not pee on himself" and does not allege anything more than de minimis discomfort. (SAC at 8 and generally.) Accordingly, Plaintiff has not alleged a plausible Section 1983 claim arising from the alleged delay in restroom access. Such claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

 *8  Conversely and though sparsely pled, at this early stage and affording Plaintiff's pro se pleading a liberal interpretation, the Court declines to sua sponte dismiss Plaintiff's remaining excessive force claims against Officer Lawston and John Doe 1 and John Doe 2.[4] Accordingly, the Court will order service of the Summonses and the SAC upon Officer Lawston, John Doe 1 and John Doe 2. Without more information, however, the USMS will not be able to effect service of the Summonses and the SAC on the John Doe Defendants. Since the Second Circuit has held that district courts must provide pro se litigants with reasonable assistance in investigating the identity of such "John Doe" defendants, see Valentin v. Dinkins, 121 F.3d 72, 75–76 (2d Cir. 1997), the Clerk of the Court will be directed to serve a copy of the SAC, together with this Order, upon the Town Attorney for the Town of Southampton. Upon said service, the Town Attorney will be directed to attempt to ascertain the full names of the unidentified John Doe Defendants identified in the SAC as allegedly having interacted with Plaintiff at the SJ Court in February 2014. Thereafter, and within thirty (30) days of the date that this Order is served upon him or her, the Town Attorney will be ordered to provide the Court and Plaintiff with the names and address(es) where the John Doe Defendants can be served.

[4]   It is unclear from Plaintiff's submission whether the challenged conduct is attributable to John Doe 1, John Doe 2, or both. Given Plaintiff's allegations that he was placed face down on the floor while

his arm was twisted and a knee was pressed into his back, in an abundance of caution and affording the pro se pleading a liberal construction, the Court declines to sua sponte dismiss Plaintiff's claims against John Doe 1 and John Doe 2.

Once the information regarding the John Doe Defendants is provided to the Court by the Town Attorney, Plaintiff's SAC shall be deemed amended to reflect the full names of these Defendants, a Summons shall be issued as to each Defendant, and the USMS are to serve each of them. The Town Attorney need not undertake to defend or indemnify these individuals at this juncture. This Order merely provides a means by which Plaintiff may properly name and serve these Defendants as instructed by the Second Circuit in Valentin.

## CONCLUSION

Accordingly and for the reasons articulated herein, **IT IS HEREBY ORDERED** that Plaintiff's:

1. Claims against the SJ Court, Justice Wilson, the Police Department, Powers, and Jane Doe are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B);

2. Excessive force claims against Officer Lawston, John Doe 1, and John Doe 2 based upon the denial of access to the restroom are DISMISSED; and,

3. Remaining excessive force claims against Officer Lawston, John Doe 1, and John Doe 2 shall proceed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall:

4. Issue Summonses and forward such Summonses and the SAC, together with this Memorandum and Order, to the USMS for service;

5. Serve a copy of the SAC, together with this Memorandum and Order, upon the Town Attorney for the Town of Southampton; and

6. Mail a copy of this Memorandum and Order to the pro se Plaintiff at his address of record; and

**IT IS FURTHER ORDERED** that the Town Attorney:

7. shall attempt to ascertain the full names of the unidentified Defendants who are identified in the SAC as John Doe 1 and John Doe 2 and who are alleged to

have interacted with Plaintiff at the SJ Court in February 2014 as is described in the SAC; and

8. within thirty (30) days of the date that this Memorandum and Order is served upon him or her, shall provide the Court and Plaintiff with the names and address(es) where the John Doe Defendants can be served.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

**SO ORDERED**.

**All Citations**

Slip Copy, 2021 WL 260102

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1963159
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

UNITED STATES of America Relator
Nyanchiew Sabat Gachgatwech, [1] Plaintiff,
v.
Loran M. BOMMER, et al., Defendants.
United States of America Relator
Nyanchiew Sabat Gachgatwech, Plaintiff,
v.
Family Court Division of Erie County, et al., Defendants.

[1]     Plaintiff purports to bring both actions as a relator
        on behalf of the United States. However, Plaintiff
        does not provide, nor could the Court locate,
        any basis for Plaintiff's authority to bring suit in
        such a capacity. Accordingly, the Court construes
        Plaintiff's claims as being brought on behalf of
        herself, in her individual capacity.

1:19-CV-00823 EAW, 1:19-cv-01016 EAW
|
Filed April 21, 2020

**Synopsis**
**Background:** Pro se plaintiff brought two actions,
purportedly alleging civil rights violations, one challenging
her eviction, and the other challenging removal of her son
from her custody and seeking return of two vehicles that had
been towed. Plaintiff moved to proceed in forma pauperis in
both actions.

**Holdings:** The District Court, Elizabeth A. Wolford, J., held
that:

[1] district court would grant plaintiff's motions for in forma
pauperis status;

[2] to the extent plaintiff's claims were premised on her rights
as a "sovereign citizen," those claims were frivolous and
failed to state a claim;

[3] district court did not have subject-matter jurisdiction over
pro se plaintiff's landlord-tenant and child custody disputes;

[4] plaintiff failed to allege any facts that would support an
inference that the towing of her vehicles violated her federal
rights;

[5] allegations that one judge wrongfully removed her son
from her custody and that another judge ordered that plaintiff
undergo a mental health evaluation, failed to allege that
judges or support magistrate acted in clear absence of all
jurisdiction, as required to overcome their judicial immunity;
and

[6] plaintiff failed to plausibly allege any constitutional
deprivation caused by or occurring pursuant to an official
custom or policy of county, as required to hold county liable
under § 1983.

Motions granted.

**Procedural Posture(s):** Motion to Proceed In Forma
Pauperis.

West Headnotes (31)

[1]     **Costs, Fees, and Sanctions** 🔑 Persons
        Entitled to Proceed in Forma Pauperis

        District court would grant pro se plaintiff's
        motions for in forma pauperis status, with respect
        to her two actions, purportedly alleging civil
        rights violations, one challenging her eviction,
        and the other challenging removal of her son
        from her custody and seeking return of two
        vehicles that had been towed; plaintiff submitted
        affirmations of poverty in support of her motions,
        and met the statutory requirements for in forma
        pauperis status. 28 U.S.C.A. § 1915(a)(1).

[2]     **Costs, Fees, and Sanctions** 🔑 Application to
        Proceed in Forma Pauperis

        The court is required to conduct an initial
        screening of complaints filed by civil litigants
        proceeding in forma pauperis, to ensure that
        the case goes forward only if it meets certain
        requirements. 28 U.S.C.A. § 1915.

**[3]** **Costs, Fees, and Sanctions** 🔑 Material Considered; Evidence

In evaluating a complaint filed by a civil litigant proceeding in forma pauperis, a court must accept as true all of the plaintiff's factual allegations and must draw all inferences in the plaintiff's favor. 28 U.S.C.A. § 1915.

**[4]** **Costs, Fees, and Sanctions** 🔑 Frivolous or Malicious Litigation

Upon conducting initial screening of a complaint filed by a civil litigant proceeding in forma pauperis, a court must dismiss the case if the court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.A. § 1915(e)(2)(B).

**[5]** **Costs, Fees, and Sanctions** 🔑 Frivolous or Malicious Litigation

To the extent pro se plaintiff's civil rights claims, challenging her eviction and the removal of her son from her custody and seeking return of two vehicles that had been towed, were premised on her rights as a "sovereign citizen," those claims were frivolous and failed to state a claim, thus warranting dismissal under in forma pauperis statute. 28 U.S.C.A. § 1915(e)(2)(B).

1 Case that cites this headnote

**[6]** **Federal Courts** 🔑 State or federal matters in general

**Federal Courts** 🔑 Domestic relations; families and children

District court did not have subject-matter jurisdiction over pro se plaintiff's landlord-tenant and child custody disputes.

**[7]** **Courts** 🔑 Particular Cases and Contexts

To the extent pro se plaintiff sought review of previous state judicial proceedings relating to her

eviction and removal of her son from her custody, such review was barred by the *Rooker-Feldman* doctrine.

**[8]** **Courts** 🔑 Federal-Court Review of State-Court Decisions; Rooker-Feldman Doctrine

The long-standing *Rooker-Feldman* doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts.

**[9]** **Courts** 🔑 Federal-Court Review of State-Court Decisions; Rooker-Feldman Doctrine

Courts consistently apply the *Rooker-Feldman* doctrine when dismissing matters arising from summary process or eviction proceedings in a state court.

**[10]** **Courts** 🔑 Particular Cases and Contexts

Courts routinely dismiss cases involving child custody orders on the basis that such actions are barred by the *Rooker-Feldman* doctrine.

**[11]** **Automobiles** 🔑 Parking or standing

Pro se plaintiff failed to allege any facts that would support an inference that the towing of her vehicles violated her federal rights; plaintiff alleged that her two vehicles were towed by the city police, under the city court, but did not provide further details as to the circumstances in which her vehicles were towed.

**[12]** **Social Security** 🔑 Execution, levy, attachment, garnishment, or other legal process

Pro se plaintiff's allegation that she was owed a refund on her social security account transaction, and request that the court stop all public servants conducting commercial transaction on her social security number, failed to provide a sufficient factual basis for such claim.

[13]   **Municipal Corporations** 🔑 Capacity to sue or be sued in general

Pro se plaintiff could not assert a claim against police department, as department was an administrative arm of the city, and did not have its own legal identity.

[14]   **Municipal Corporations** 🔑 Capacity to sue or be sued in general

A police department is an administrative arm of the municipal corporation and cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.

[15]   **Federal Courts** 🔑 Courts

To the extent pro se plaintiff sought to assert claims against city court or county court, such claims were barred by the New York State Unified Court System's Eleventh Amendment immunity; city court and county court were part of the New York State Unified Court System. U.S. Const. Amend. 11.

2 Cases that cite this headnote

[16]   **Judges** 🔑 Liabilities for official acts

**Justices of the Peace** 🔑 Judicial acts

Judges and support magistrates are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities.

1 Case that cites this headnote

[17]   **Judges** 🔑 Liabilities for official acts

Allegations that the judge acted in bad faith or with malice do not pierce the protection of judicial immunity.

[18]   **Judges** 🔑 Liabilities for official acts

**Justices of the Peace** 🔑 Judicial acts

Pro se plaintiff's allegations that one judge wrongfully removed her son from her custody and that another judge ordered that plaintiff undergo a mental health evaluation, failed to allege that judges or support magistrate acted in clear absence of all jurisdiction, as required to overcome their judicial immunity.

1 Case that cites this headnote

[19]   **Judges** 🔑 Liabilities for official acts

A judge will not be deprived of judicial immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.

1 Case that cites this headnote

[20]   **Public Employment** 🔑 Judicial immunity

Judicial immunity applies to government officials for their acts that assist a judge in the performance of his or her judicial duties.

[21]   **Clerks of Courts** 🔑 Liabilities for negligence or misconduct

In the State of New York, a county clerk's duties include those of a state-court clerk, for purposes of judicial immunity. N.Y. Const. art. 6, § 6; N.Y. County Law § 525(1).

[22]   **Clerks of Courts** 🔑 Liabilities for negligence or misconduct

To the extent pro se plaintiff's claims against county clerk, alleging that county clerk's office and district attorney's office ignored case which was brought to their offices regarding violations by an agency under their supervision, were based on the clerk's performance of a function closely associated with the judicial process, county clerk was entitled to judicial immunity.

[23]   **Federal Courts** 🔑 Other particular entities and individuals

Pro se plaintiff's complaint contained no allegations concerning the New York State

Department of State, although it listed Department as a defendant, and thus, district court could not discern whether plaintiff alleged claims that were not subject to immunity under the Eleventh Amendment. U.S. Const. Amend. 11.

**[24]** **Federal Courts** 🔑 Suits Against States; Eleventh Amendment and Sovereign Immunity

**Federal Courts** 🔑 Waiver by State; Consent

**Federal Courts** 🔑 By constitution or statute

The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such suit or an express statutory waiver of immunity. U.S. Const. Amend. 11.

**[25]** **District and Prosecuting Attorneys** 🔑 Liabilities for official acts, negligence, or misconduct

A prosecutor is entitled to absolute immunity for performing prosecutorial activities that are intimately associated with the judicial phase of the criminal process.

**[26]** **District and Prosecuting Attorneys** 🔑 Liabilities for official acts, negligence, or misconduct

Generally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity; most other activities are characterized as administrative or investigative and, thus, merit less protection.

**[27]** **District and Prosecuting Attorneys** 🔑 Liabilities for official acts, negligence, or misconduct

District court was unable to discern the substance of pro se plaintiff's allegation that county clerk's office and county district attorney's office ignored case which was brought to

their offices regarding violations by an agency under their supervision, and thus, could not determine whether plaintiff's claim related to the district attorney's office's prosecutorial tasks, for which district attorney was entitled to absolute immunity, as opposed to investigative tasks.

**[28]** **Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

**Civil Rights** 🔑 Issues, proof, and variance

To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. 42 U.S.C.A. § 1983.

**[29]** **Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

Pro se plaintiff failed to plausibly allege any constitutional deprivation caused by or occurring pursuant to an official custom or policy of county, as required to hold county liable under § 1983. 42 U.S.C.A. § 1983.

**[30]** **Civil Rights** 🔑 Acts of officers and employees in general; vicarious liability and respondeat superior in general

Municipalities are not subject to § 1983 liability solely on the basis of respondeat superior. 42 U.S.C.A. § 1983.

**[31]** **Federal Civil Procedure** 🔑 Effect of amendment

An amended complaint is intended to completely replace the prior complaint in the action, and thus it renders the original complaint of no legal effect.

2020 WL 1963159

**Attorneys and Law Firms**

United States of America Relator Nyanchiew Sabat Gachgatwech, Buffalo, NY, pro se.

## INTRODUCTION

ELIZABETH A. WOLFORD, United States District Judge

**\*1** *Pro se* plaintiff Nyanchiew Sabat Gachgatwech ("Plaintiff") filed two actions, purportedly alleging civil rights violations—*United States of America Relator Nyanchiew Sabat Gachgatwech v. Bommer, et al.*, No. 1:19-cv-00823-EAW (the "Bommer Action") and *United States of America Relator Nyanchiew Sabat Gachgatwech v. Family Court Division of Erie County, et al.*, No. 1:19-cv-01016 EAW (the "Family Court Action"). (Dkt. B-1; Dkt. F-1).[2] Plaintiff has also filed motions to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and affirmations of poverty in support thereof. (Dkt. B-2; Dkt. F-2). Because the Complaints in each of these actions suffer from similar defects, the Court has considered them together.

[2]   References to numbered docket entries prefaced with "B" refer to documents filed in the Bommer Action, and references to numbered docket entries prefaced with an "F" refer to documents filed in the Family Court Action.

The Court has reviewed Plaintiff's motions for *in forma pauperis* status and they are granted. The Court has also reviewed Plaintiff's Complaints (Dkt. B-1; Dkt. F-1) as required by 28 U.S.C. § 1915(e)(2) and finds that Plaintiff's claims must be dismissed. However, Plaintiff will be granted an opportunity to remedy certain of the defects as discussed below.

## BACKGROUND

The following facts are taken from Plaintiff's Complaints. (Dkt. B-1; Dkt. F-1). Although Plaintiff's allegations are disjointed and difficult to discern, as is required at this stage of the proceedings, the Court treats Plaintiff's factual claims as true.

### I. Bommer Action

In the Bommer Action, Plaintiff asserts claims against defendants Loran M. Bommer ("Bommer"), Sabrie Mouss ("Mouss"), and the Buffalo City Court (collectively, the "Bommer Defendants"). (Dkt. B-1). Plaintiff rented a property for two and a half years from Mouss. (*Id.* at 4). Plaintiff requested Mouss make repairs to damaged items in the property. (*Id.*). However, Mouss never made the repairs. (*Id.*). Plaintiff alleges that Bommer and Mouss "conspire[d] against [Plaintiff's] business name[, and] refused to provide [her with a] landlord statement." (*Id.*). Sometime thereafter, Mouss, through his or her counsel Bommer, instituted eviction proceedings against Plaintiff. (*See id.*). On June 19, 2019, a warrant was issued to evict Plaintiff from the property. (*Id.* at 7).

Plaintiff alleges that she was not properly served as her office was closed when Bommer "served the unsigned [petition] by [the] [j]udge." (*Id.*). Plaintiff alleges that the Buffalo City Court "document" ordering her eviction was an illegal order because it did not list the name or signature of the issuing judge. (*Id.* at 4). Plaintiff further alleges that "[her] office did not get a chance to be present in a court of law." (*Id.*). The gravamen of Plaintiff's Complaint appears to be that she was wrongfully evicted from the property without appropriate process of law. (*Id.* at 5 ("All I need is for the court to see the facts. The service was illegal. No proper [service]. These parties [were] agents of United States. All thing is legal, if not legal is illegal. We must not be lawless people.")).

### II. Family Court Action

**\*2** In the Family Court Action, Plaintiff asserts claims against defendants Family Court Division of Erie County ("Erie County Family Court"), Erie County, Buffalo City Court, New York State Department of State, Erie County Family Court Judge Mary G. Carney, Erie County Family Court Support Magistrate John J. Aman, Erie County Clerk Michael P. Kearns, Erie County District Attorney John J. Flynn, and Buffalo City Court Judges Betty Calvo-Torres and Debra Givens (collectively, the "Family Court Defendants"). (Dkt. B-1 at 2-3).

Plaintiff alleges that Judge Carney removed Plaintiff's son from her custody "without [a] lawful claim." (*Id.* at 5). Plaintiff also alleges that the Erie County Clerk's Office and the Erie County District Attorney's Office "ignored the case." (*Id.*). Plaintiff further alleges that her two vehicles were towed by "the Buffalo City Police, under Buffalo City Court," and that the Buffalo City Police and the New York State Police issued false arrest warrants. (*Id.*). Plaintiff further alleges that

despite no "ev[i]dence of measurable disease," Judge Givens ordered Plaintiff undergo a mental health evaluation by an unlicensed doctor at the Erie County Mental Health Clinic. (*Id.*).

Based on these allegations, Plaintiff asks the Court to return her son and vehicles. (*Id.* at 6). Plaintiff also requests that the Court order the removal of the restriction on Plaintiff's "social security number account credits to discharges public and private debt," and that the Court stop "public servants conducting commercial transactions on [Plaintiff's] social security number." (*Id.*).

## DISCUSSION

### I. Plaintiff's Motions for *In Forma Pauperis* Status are Granted

[1] Plaintiff's motions for *in forma pauperis* status and affirmations of poverty in support thereof have been reviewed in accordance with 28 U.S.C. § 1915(a)(1). Plaintiff has met the statutory requirements for *in forma pauperis* status and permission to proceed *in forma pauperis* is granted. The Court now turns to its obligation to screen Plaintiff's Complaints pursuant to 28 U.S.C. § 1915.

### II. Legal Standard

[2] [3] [4] "Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements." *Guess v. Jahromi*, No. 6:17-CV-06121(MAT), 2017 WL 1063474, at *2 (W.D.N.Y. Mar. 21, 2017), *reconsideration denied*, No. 6:17-CV-06121(MAT), 2017 WL 1489142 (W.D.N.Y. Apr. 26, 2017). In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations and must draw all inferences in the plaintiff's favor. *See, e.g.*, *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Upon conducting this initial screening, a court must dismiss the case pursuant to § 1915(e)(2)(B) "if the [c]ourt determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Eckert v. Schroeder, Joseph & Assocs.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005).

### III. Plaintiff's Claims Based upon "Sovereign Citizenship"

[5] Plaintiff's submissions and the allegations contained therein are characteristic of claims by "sovereign citizens." For example, Plaintiff refers to her name as a "trademark name," repeatedly refers to other individuals as "corporations," and claims to be "the sovereign power and tribunal of record" for her own "sovereign nation state." (*See, e.g.*, Dkt. F-1 at 7-9, 18).

The Second Circuit has described "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013). "The 'sovereign citizen' belief system has been described by other courts as 'completely without merit,' 'patently frivolous,' *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992), and having 'no conceivable validity in American law,' *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)." *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *10 (N.D.N.Y. July 24, 2019). Accordingly, to the extent that Plaintiff's claims are premised on her rights as a "sovereign citizen," those claims are dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

### IV. Plaintiff's Claims Based on Her Eviction and Child Custody Proceedings

**\*3** [6] Liberally construing Plaintiff's Complaints, it appears that Plaintiff requests the Court to review the validity of her eviction and child custody proceedings. However, the Court does not have subject-matter jurisdiction over landlord-tenant and child custody disputes. *See Rosquist v. St Marks Realty Assoc., LLC*, No. 08-CV-2764 (NGG), 2008 WL 2965435, at *2 (E.D.N.Y. Aug. 1, 2008) (citing cases holding federal courts do not have jurisdiction over residential landlord-tenant matters); *Torres v. Family Court/Administration for Children's Servs.*, No. 01 CIV. 4351(RWS), 2001 WL 1111510, at *1-2 (S.D.N.Y. Sept. 20, 2001) ("Torres' claims against [the Administration for Children's Services] and the Family Court fall within the ambit of cases excluded by *Ankenbradt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), because the gravamen of her claim involves child custody—an area at the core of the domestic relations exception.").

[7] [8] Further, to the extent that Plaintiff seeks review of previous state judicial proceedings, such review is barred by the *Rooker*-*Feldman* doctrine. The long-standing *Rooker*-*Feldman* doctrine "provides that, in most

circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." *Morrison v. City of N.Y.*, 591 F.3d 109, 112 (2d Cir. 2010) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-83, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923)).

**[9]** **[10]** "[C]ourts consistently apply the *Rooker-Feldman* doctrine when dismissing matters arising from summary process or eviction proceedings in a state court." *Ratcliffe v. Liberty Home Equity*, No. 3:19-CV-01842 (KAD), 2019 WL 6135446, at *2 (D. Conn. Nov. 19, 2019) (collecting cases). Courts also routinely dismiss cases involving child custody orders on the basis that such actions are barred by the *Rooker-Feldman* doctrine. *See Hagy v. New York State Supreme Court Justice Joan B. Lobis*, No. 09 Civ. 0879(SCR) (PED), 2010 WL 1789920, at *3 (S.D.N.Y. Jan. 4, 2010) (collecting cases). The Court sees no reason to depart from this precedent here.

Accordingly, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims arising out of her eviction and child custody proceedings and, thus, dismisses such claims without prejudice. *See Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017) ("[T]he *Rooker-Feldman* doctrine implicates federal courts' subject matter jurisdiction, rather than the substantive merits of a case. And where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice." (citation and quotation omitted)). Moreover, because a more fulsome pleading could not cure this defect, the Court does not grant leave to amend these claims.

## V. Plaintiff's Remaining Claims

**[11]** **[12]** Plaintiff also complains that her two vehicles were towed by "Buffalo City Police, under Buffalo City Court." (Dkt. F-1 at 5). However, Plaintiff does not provide further details as to the circumstances in which her vehicles were towed, and so no fact-finder could conclude that the towing was a violation of Plaintiff's federal rights. Plaintiff also alleges that she is owed a "refund" on her "social security account transaction – counterfeit security" (*id.* at 4), and requests the Court to stop "all public servants conducting commercial transaction on [Plaintiff's] social security number" (*id.* at 5). Based on these sparse and disjointed allegations, the Court is unable to discern the factual basis of Plaintiff's remaining claims. Accordingly, Plaintiff's claims must be dismissed for failure to state a claim.

Plaintiff's claims are further subject to dismissal as she either does not allege the personal involvement of individual Defendants or seeks to assert claims against Defendants that either cannot be sued or are immune from suit. However, as outlined below, Plaintiff is granted leave to amend claims against certain Defendants.

### A. Buffalo City Police

**\*4** **[13]** **[14]** Plaintiff lists the Buffalo City Police as a defendant. However, "[a] police department is an administrative arm of the municipal corporation" and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999); *see also Boans v. Town of Cheektowaga*, 5 F. Supp. 3d 364, 373 (W.D.N.Y. 2014) ("Because a police department is an administrative arm of the municipal corporation, a police department does not exist separate and apart from the municipality and does not have its own legal identity and, thus, cannot sue or be sued." (quotation omitted)); *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued."). Accordingly, to the extent that Plaintiff seeks to assert a claim against the Buffalo City Police, such claim is dismissed with prejudice.

### B. Buffalo City Court and Erie County Family Court

**[15]** Plaintiff also lists the Buffalo City Court as a defendant. However, "[t]he Buffalo City Court is ... a part of the New York State Unified Court System." *Lockridge v. Buffalo City Court*, No. 18-CV-834, 2019 WL 1557828, at *2 (W.D.N.Y. Apr. 10, 2019) (citing *Brown v. Paterson*, No. 10 Civ. 5833(PAC)(HBP), 2011 WL 7429454, at *10 (S.D.N.Y. Dec. 27, 2011)). The New York State Unified Court System "is protected by Eleventh Amendment sovereign immunity" and, thus, is "immune from suit." *Gollomp v. Spitzer*, 568 F.3d 355, 367 (2d Cir. 2009). Consequently, to the extent that Plaintiff seeks to assert a claim against the Buffalo City Court, a part of the New York State Unified Court System, such claim is dismissed with prejudice.

For the same reason, Plaintiff's claim against the Erie County Family Court must also be dismissed. *See Dyer v. Family Court*, No. 16-cv-6876 (BMC)(RLM), 2016 WL 7494864, at *2 (E.D.N.Y. Dec. 28, 2016) ("[A]ny claims against the Family Court, a court that is part of the New York State

Unified Court System, must be dismissed because it is entitled to sovereign immunity as guaranteed by the Eleventh Amendment."); *Amaker v. State of N.Y. Cty. of New York Family Court*, No. 11-cv-4815 (KAM), 2011 WL 4916702, at *2 (E.D.N.Y. Oct. 17, 2011) ("The New York State Unified Court System, of which the family court is a part, is entitled to Eleventh Amendment sovereign immunity.").

### C. Judges Mary G. Carney, Betty Calvo-Torres, and Debra Givens, and Support Magistrate John J. Aman

[16]     [17]   Plaintiff also lists Support Magistrate John J. Aman, Erie County Family Court Judge Mary G. Carney, and Buffalo City Court Judges Betty Calvo-Torres and Debra Givens as defendants. However, judges and support magistrates are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *see also Parent v. New York*, 786 F. Supp. 2d 516, 533-34 (S.D.N.Y. 2011) (dismissing claims against both a judge and support magistrate on the basis of judicial immunity). Allegations that the judge acted in bad faith or with malice (which are not present here) do not pierce the protection of immunity. *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court has expressly applied the doctrine of judicial immunity to actions brought pursuant to § 1983. *See Pierson*, 386 U.S. at 547, 87 S.Ct. 1213.

[18]     [19]   The Supreme Court has developed a two-part test for determining whether a judge is entitled to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). First, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " *Id.* at 356-57, 98 S.Ct. 1099 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871)); *see also Maestri v. Jutkofsky*, 860 F.2d 50 (2d Cir. 1988) (finding no immunity where town justice issued arrest warrant for conduct which took place within neither his town nor an adjacent town, thereby acting in the absence of all jurisdiction). The Complaint alleges that Judge Carney wrongfully removed Plaintiff's son from her custody, and that Judge Givens ordered Plaintiff undergo a mental health evaluation. (Dkt. F-1 at 5). The Complaint contains no allegations concerning Judges Calvo-Torres and Support Magistrate Aman. Plaintiff makes no allegations that any of these Defendants acted in clear absence of all jurisdiction, and so her claims against them are subject to dismissal. However,

to the extent that Plaintiff can plausibly allege, if true, that these Defendants acted in clear absence of all jurisdiction, Plaintiff will be permitted to replead her claims against these Defendants.

### D. Erie County Clerk Michael P. Kearns

*5 [20]     [21]   Plaintiff lists Erie County Clerk Michael P. Kearns as a defendant. "[Judicial immunity] also applies to government officials for their acts that assist a judge in the performance of his or her judicial duties." *Hudson v. Forman*, No. 19-CV-1830 (CS), 2019 WL 1517581, at *3 (S.D.N.Y. Apr. 8, 2019) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). "In the State of New York, a County Clerk's duties include those of a state-court clerk." *Id.* (citing N.Y. Cons. Art. VI, § 6(e), N.Y. County Law § 525(1)); *see also Diaz v. Pataki*, 368 F. Supp. 2d 265, 271 (S.D.N.Y. 2005) (holding that pursuant to state law, the Bronx County Clerk's "primary function is to serve as a clerk of the Supreme Court of Bronx County, a state court" (internal quotation marks and citation omitted)).

[22]   Here, the Complaint only alleges the following regarding the Erie County Clerk's office: "Erie County Clerk office and Erie County District Attorney Office. These two offices ignored the case which was brought to their offices regarding violation done by one of the agency under their supervisor administration on or about 2011 until current time." (Dkt. F-1 at 5). If the complained of action was a result of the County Clerk's performance of a function closely associated with the judicial process, the County Clerk would be entitled to judicial immunity. *See Hudson v. Forman*, No. 19-CV-9637 (CM), 2019 WL 6312004, at *3-4 (S.D.N.Y. Nov. 25, 2019) (finding the county clerk defendant entitled to absolute judicial immunity "for following court procedure regarding certification of the record for appeal"); *Hudson*, 2019 WL 1517581, at *3 (finding the county clerk defendant entitled to judicial immunity for refusing to issue the plaintiff a summons and to certify the plaintiff's record on appeal).

However, to the extent that Plaintiff can plausibly allege, if true, a cognizable claim against the County Clerk—not arising out of his performance of a function closely associated with the judicial process—Plaintiff will be permitted to replead her claim against this Defendant.

### E. New York State Department of State

[23]     [24]   Plaintiff lists the New York State Department of State as a defendant. The Eleventh Amendment bars federal

courts from exercising subject matter jurisdiction over claims against states absent their consent to such suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Here, Plaintiff's Complaint contains no allegations concerning the New York State Department of State. As such, the Court cannot discern whether Plaintiff alleges claims that are not subject to immunity under the Eleventh Amendment. Accordingly, Plaintiff's claim against the New York State Department of State is dismissed without prejudice. However, Plaintiff will be permitted to amend her complaint to set forth the necessary allegations therein.

### F. District Attorney John J. Flynn

**[25]** **[26]** Plaintiff also lists District Attorney Flynn as a Defendant. However, a prosecutor is entitled to absolute immunity for performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process." *Hill v. City of N.Y.*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "[G]enerally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity. Most other activities are characterized as administrative or investigative and, thus, merit less protection." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (citations and quotation marks omitted).

**\*6** In *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the United States Supreme Court reaffirmed the following:

> acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand

jury after a decision to seek an indictment has been made.

*Id.* at 273, 113 S.Ct. 2606. The *Buckley* Court distinguished between "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand" and explained that a prosecutor is absolutely immune while performing the former function but not if performing the latter function. *Id.*

**[27]** Here, the Complaint only alleges the following regarding the District Attorney's office: "Erie County Clerk office and Erie County District Attorney Office. These two offices ignored the case which was brought to their offices regarding violation done by one of the agency under their supervisor administration on or about 2011 until current time." (Dkt. F-1 at 5). The Court is unable to discern the substance of Plaintiff's allegations and, thus, cannot determine whether Plaintiff's claim relates to the District Attorney's office's prosecutorial tasks as opposed to investigative tasks. However, Plaintiff will be permitted to amend her complaint to set forth the necessary allegations therein.

### G. Erie County

**[28]** Plaintiff lists Erie County as a defendant. To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted); *see also Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.").

**[29]** **[30]** Here, Plaintiff sets forth no allegations against Erie County, appearing to rely solely on the doctrine of *respondeat superior*. However, municipalities are not subject to § 1983 liability solely on the basis of *respondeat superior*. *Collins v. City of Harker Heights*, 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d

611 (1978). Plaintiff has not plausibly alleged a constitutional deprivation was caused by or occurred pursuant to an official custom or policy of Erie County, but will be permitted to amend her complaint to set forth the necessary allegations therein.

### VI. Leave to Amend

 *7  To the extent Plaintiff may have plausible claims in connection with the towing of her vehicle or "social security account transaction – counterfeit security," Plaintiff is granted leave to file an amended complaint in the Family Court Action (No. 1:19-cv-01016 EAW) **by May 22, 2020**. Plaintiff is not required to file an amended complaint—but if she fails to do so, her remaining claims will be dismissed without prejudice. Plaintiff is further advised that should she file an amended complaint, she must include specific allegations as to each Defendant's personal involvement in connection with her claims. The Court will enclose with this Order instructions for filing an amended complaint, and the civil complaint form to be used in a non-prisoner context.

 [31]  Plaintiff is also advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [the original complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, Plaintiff's amended complaint must include all of the allegations against Defendants, such that the amended complaint may stand alone as the sole complaint in the action.

### CONCLUSION

For the reasons set forth above, Plaintiff's motions to proceed *in forma pauperis* are granted. The Court dismisses Plaintiff's claims in connection to her eviction and child custody proceedings without prejudice for lack of subject matter jurisdiction. Consequently, the Bommer Action (No. 1:19-CV-00823 EAW) is dismissed in its entirety and the Clerk of Court is directed to close the case.

In addition, with respect to the remaining claims in the Family Court Action (No. 1:19-CV-01016 EAW), Plaintiff's claims based upon "sovereign citizenship," and her claims against the Buffalo City Police, Buffalo City Court, and Erie County Family Court are dismissed with prejudice. Plaintiff is granted leave to file an amended complaint, as directed above, **by May 22, 2020**, in which she must include the necessary allegations regarding her claims. If Plaintiff fails to file an amended complaint by this date, her remaining claims will be dismissed with prejudice and the Clerk of Court is directed to close the case without further order of the Court.

SO ORDERED.

### All Citations

--- F.Supp.3d ----, 2020 WL 1963159

---

1996 WL 156764
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Emon DAWKINS, Plaintiff,

v.

The STATE OF NEW YORK, Trooper Antone
R. Irwin of the New York State Police and The
New York State Police Department, Defendants.

No. 93-CV-1298 (RSP/GJD).
|
March 28, 1996.

**Attorneys and Law Firms**

Emon Dawkins, Liverpool, New York, Plaintiff, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, Syracuse, New York, for Defendants; G. Robert McAllister, Assistant Attorney General, of counsel.

*MEMORANDUM, DECISION AND ORDER*

POOLER, District Judge.

INTRODUCTION

*\*1* On June 13, 1992, defendant New York State police officer Antone R. Irwin ("Trooper Irwin") stopped and ticketed plaintiff Emon Dawkins for speeding on the New York State Thruway. Dawkins pled not guilty and elected trial in the Town Court of Dewitt, New York. When Dawkins appeared for trial, he received an additional ticket [1] for driving an unregistered vehicle. The Town Court found Dawkins not guilty of both charges. Dawkins then filed this lawsuit claiming that Trooper Irwin (1) stopped him without probable cause and on racial grounds, and (2) issued the unregistered vehicle citation in retaliation for electing trial on the speeding charge. Dawkins alleges that his Fourth, Sixth, Eighth, and Fourteenth Amendment rights have been violated and seeks redress under 42 U.S.C. §§ 1983 and 1985. Defendants all move for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that Dawkins' claims are barred by the Eleventh Amendment to the United States Constitution.

Because I find that the Eleventh Amendment provides immunity for some defendants on some claims, I grant in part and deny in part, defendants' motion for summary judgment.

DISCUSSION

I. Summary Judgment Standard

Summary judgment is granted when viewing the evidence in a light most favorable to the nonmovant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir. 1993). The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). In short, the nonmovant must demonstrate to the court that issues of fact exist that must be decided by a factfinder, because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2nd Cir. 1990).

II. Pro Se Plaintiff

Because Dawkins is a *pro se* plaintiff, his complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotations omitted).

III. Defendants New York State and the New York State Police Department

It is well settled that "[a]bsent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by private parties against the states." *Farid v. Smith,* 850 F.2d 917, 920-21 (2d Cir. 1988) (citing *Kentucky v. Graham,* 473 U.S. 159 (1985)). When Congress enacted Sections 1983 and 1985, it did not abrogate the state's Eleventh Amendment immunity. *United States v. City of Yonkers,* 880 F. Supp 212, 231 (S.D.N.Y. 1995) (citing *Quern v. Jordan,* 440 U.S. 332

**Dawkins v. State, Not Reported in F.Supp. (1996)**

1996 WL 156764

(1979). Because New York State has Eleventh Amendment immunity from suit, Dawkins' claims against defendant New York State are dismissed.

**\*2** It is equally well established that the "Eleventh Amendment's containment of federal judicial power is not restricted to actions where the state is a named defendant, but extends further to those actions where liability, if imposed, must be paid from the state fisc." *New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir. 1995). For Eleventh Amendment purposes, governmental entities of a state that are considered "arms of the state" receive Eleventh Amendment immunity. *Will v. Michigan Dep't of Police,* 491 U.S. 58, 70 (1989). Because defendant New York State Police Department is a division of the executive department of New York State, Dawkins claims against the department are dismissed. *See* N.Y.Exec.Law § 210 (McKinney 1993); *Komlosi v. New York State OMRDD,* 64 F.3d 810 (2d Cir. 1995) (holding that OMRDD is an arm of the state and thus cannot be sued under §1983); *see also Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir. 1991).

Moreover, New York State and the New York State Police Department are not "person[s]" within the meaning of Sections 1983 and 1985. *See Howlett v. Rose,* 496 U.S. 356, 365 (1990); *see also, Thompson v. State of New York,* 487 F. Supp. 212, 228 (N.D.N.Y. 1979, Munson, J.) (holding that the State of New York and the New York State Police Department are not "persons" for purposes of the threshold requirement of a cause of action under § 1985).

Because defendants New York State and the New York State Police Department (1) have not consented either expressly or impliedly to permit this suit to proceed in federal court and (2) are not "persons" within the meaning of the relevant statutes, I dismiss the claims against these two defendants. [2]

## IV. Defendant Antone R. Irwin

### *A. Section 1985*

Section 1985(3) makes it illegal "[i]f two or more persons ... conspire ... for the purposes of depriving .. any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). Trooper Irwin is the only person named or mentioned in Dawkins' complaint. Because Dawkins fails to offer any support for his claim that two or more persons conspired to deny him his rights, I must dismiss his Section 1985 claim against Trooper Irwin.

### *B. Section 1983*

A Section 1983 claim requires that Dawkins prove that (1) Trooper Irwin deprived him of a federal right and (2) Trooper Irwin acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980).

In his motion for summary judgment, Trooper Irwin spends great energy arguing that a cause of action alleging only that, "harm from official capacity acts is barred by the Eleventh Amendment." McAllister Aff., at ¶ 5. Trooper Irwin is only partially correct.

A suit against Trooper Irwin in his official capacity, is a suit against the state and he is "entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993). Therefore, Dawkins' Section 1983 claim made against Trooper Irwin in his official capacity is dismissed.

**\*3** However, a claim against Trooper Irwin in his individual capacity, even when performing official acts, is not afforded Eleventh Amendment protection. *Id.* [3] Although Dawkins' complaint is silent concerning the capacity in which he sues Trooper Irwin, his failure to specify the capacity does not justify an outright dismissal of his claim. *Oliver Schools,* 930 F.2d at 252; *see also Kentucky,* 473 U.S. at 167 n. 14, (1985) (indicating that "in many cases the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both" and "[t]he course of proceedings ... will indicate the nature of the liability sought to be imposed." (citations and internal quotations omitted)). [4]

During oral argument Dawkins stated that his claims against Trooper Irwin are in both his individual and official capacity. Therefore, I accept that Dawkins intends to proceed against Trooper Irwin in his individual capacity and find that the Eleventh Amendment does not protect Trooper Irwin from Dawkins' individual capacity claims. *Farid,* 850 F.2d at 921 (2d Cir. 1988) (holding that "[t]he eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."(quoting *Kentucky,* 473 U.S. at 166-67)).

Defendants' reliance on *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 (1984), is misplaced. *Pennhurst* stands for the proposition that the Eleventh Amendment prohibits federal courts from ordering state officials to

**Dawkins v. State, Not Reported in F.Supp. (1996)**

Case 6:22-cv-01125-TJM-TWD   Document 7   Filed 12/13/22   Page 31 of 46

1996 WL 156764

conform their conduct to state law. *Id.* at 121 (holding that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.").

*Pennhurst* bars state claims against state officials in their official capacities. Dawkins claims that his federal constitutional rights were violated by a state employee acting under color of state law in his individual capacity. *Pennhurst* is not applicable. *See Farid,* 850 F.2d at 921 (holding that "the [Supreme Court] has consistently held that the eleventh amendment does not protect state officials from personal liability when their actions violate federal law, even though state law purports to require such actions.").

Dawkins' Section 1983 claim against Trooper Irwin in his individual capacity is not barred by the Eleventh Amendment.

### 2. Qualified Immunity

Trooper Irwin also argues that "without a showing of a violation of a clearly established right and affirmative proof of some *ultra vires* conduct ... an individual capacity action cannot be maintained." Def.'s Mem. at 6. Although Irwin makes this statement in support of his Eleventh Amendment argument, it could also be read as a claim of qualified immunity. The doctrine of qualified immunity protects public employees in their individual capacities. *Hafer,* 502 U.S. at 31. Qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir 1995) (citations and internal quotations omitted). The standard governing the use of a qualified immunity defense "has evolved into one of objective reasonableness, designed to 'permit the resolution of many insubstantial claims on summary judgment.'" *Robison v. Via,* 821 F.2d 913, 920 (2d Cir. 1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

**\*4** However, qualified immunity is an affirmative defense which the individual defendant must plead. The Supreme Court has held that there is "no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith." *Gomez,* 446 U.S. at 640. Rather, "[i]t is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful." *Id.*

Even if I read Trooper Irwin's answer liberally to include a qualified immunity defense, he fails in this motion to establish that "it was objectively reasonable for [him] to believe that his acts did not violate [Dawkins] rights." *Robison,* 821 F.2d at 921 (2d Cir. 1987). [5]

According to Dawkins he was (1) stopped by officer Irwin while driving at a legal rate of speed, (2) asked to produce his drivers license, vehicle registration, thruway toll card and proof of insurance, (3) ticketed for speeding, and (4) advised, but not ticketed, for an expired vehicle registration. Trooper Irwin had possession of the documents for a total of five minutes. After leaving the scene, Dawkins noticed that the speeding ticket misstated the correct time of day and listed his rate of speed at sixty-eight miles per hour as opposed to Trooper Irwin's oral representation that Dawkins was traveling at fifty-eight miles per hour. At trial, Trooper Irwin issued Dawkins a ticket for driving an unregistered vehicle. Found innocent on both charges, Dawkins alleges that Trooper Irwin (1) illegally stopped and detained him based on race and without probable cause, and (2) ticketed him for the unregistered vehicle in retaliation for electing trial. Compl. at II(c).

In his answer and in his memorandum of law in support of his motion for summary judgment, Trooper Irwin fails to provide any evidence concerning his underlying basis for stopping Dawkins. Nor does he offer any justification for ticketing Dawkins for an unregistered vehicle three months after the initial stop. The record before me does not contain an affidavit or affirmation from Trooper Irwin giving his version of the incident. Moreover, lacking any evidence to the contrary, I accept as true, Dawkins' statement that he was driving at a legal rate of speed, received a second ticket in retaliation for electing trial, and was found innocent of both offenses. [6]

Defendant has done nothing to refute Dawkins' claims. Because Trooper Irwin fails to offer any support concerning the objective reasonableness of stopping Dawkins, ticketing him, and then ticketing him again three months after the initial stop, I deny his motion for summary judgment. [7]

### CONCLUSION

For the foregoing reasons I (1) GRANT defendants motion for summary judgment on behalf of defendants State of New

Dawkins v. State, Not Reported in F.Supp. (1996)

1996 WL 156764

Case 6:22-cv-01125-TJM-TWD    Document 7    Filed 12/13/22    Page 32 of 46

York State and the New York State Police Department, (2) GRANT defendant Antone R. Irwin's motion for summary judgement with respect to claims as they relate to acts in his official capacity, (3) GRANT defendant Antone R. Irwin's motion for summary judgment with respect to the Section 1985 claim, and (4) DENY defendant Irwin's motion for summary judgement with respect to claims against him in his personal capacity under Section 1983.

**\*5** IT IS SO ORDERED

1    Defendants contend that Trooper Irwin gave Dawkins the additional ticket at the time of the initial stop. Defs.' Answer at ¶ 2.

2    In his responsive papers, Dawkins requests "declaratory or injunctive relief based on the State of New York policies and statutes of New York Civil Rights Law § 50-a, and Public Office (sic) Law § 89(2)(b) and the use thereof." Pl.'s Mem. at 2. However, attempts to secure prospective relief requiring state officials to comply with state law, as opposed to federal law, is barred by the Eleventh Amendment. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 103-106 (1984) Therefore, Dawkins' new claim for prospective relief cannot be sustained and is barred by the Eleventh Amendment.

3    "*Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not persons for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals... the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983." *Hafer v. Melo,* 502 U.S. 21, 27, 31 (1991) (citations and internal quotations omitted).

4    Notwithstanding Dawkins' failure to make clear his intention to state a claim against Trooper Irwin individually, Defendants' memorandum of law acknowledges a cause of action against Trooper Irwin in his individual capacity. Def.'s Mem. at 4.

5    For the purposes of discussing qualified immunity I will read defendants' answer liberally. However, it is not clear from defendants' answer that they have preserved the right to raise a qualified immunity defense. If leave to amend the answer is requested, it might well be granted. *See, Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir. 1984).

6    In his complaint, Dawkins alleges violations to his Fourth, Sixth, Eighth, and Fourteenth Amendment Rights. Because defendants focus their motion for summary judgment on their affirmative defenses, I do not *sua sponte* consider the merits of Dawkins' claims. However, I note that, "an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments." *U.S. v. Scopo,* 19 F.3d 777, 781 (2d Cir. 1994) (quoting *U.S. v. Hassan El,* 5 F.3d 726, 729 (4th Cir.1993). Accordingly, Trooper Irwin's stop of Dawkins, "must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." Id. (citations omitted). Probable cause exist when the police reasonably believe that "an offense has been or is being committed." Id. (citing *United States v. Cruz,* 834 F.2d 47, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1077 (1988). "When an officer observes a traffic offense-- however minor--he has probable cause to stop the driver of the vehicle." Id. at 782 (quoting *United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990)).

7    In order to prevail on a qualified immunity defense, the defendant must show either (1) "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution"; (2) "it was not clear at the time of the acts at issue that an exception did not permit those acts"; or (3) "it was objectively reasonable for [Trooper Irwin] to believe that his acts did not violate [Dawkins'] rights. *Robison,* 821 F.2d at 920-21.

**All Citations**

Not Reported in F.Supp., 1996 WL 156764

**Dawkins v. State, Not Reported in F.Supp. (1996)**

1996 WL 156764

---

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 1462217
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jeffrey DICKS, Plaintiff,

v.

BINDING TOGETHER, INC.; Joseph Williams, the
Warden of Lincoln Correctional Facility; Members of the
Temporary Release Committee; TRC Chairperson Joan
Taylor, SCC; P.O Brewington; C.O. Fair; Corrections
Counselor Ms. Donna McDonald; Deputy Superintendent
Maria Tirone; and State of New York, Defendants.

No. 03 Civ. 7411(HB).
|
May 18, 2007.

**OPINION & ORDER**

Hon. HAROLD BAER, JR., District Judge. [1]

[1]

The Court wishes to thank Chris Fitzgerald of
CUNY School of Law for his assistance in
researching this Opinion.

**\*1** *Pro se* Plaintiff Jeffrey Dicks ("Plaintiff" or "Dicks")
brings this action against Defendants Superintendent
Joseph Williams, Deputy Superintendent Maria Tirone,
Corrections Counselor Donna MacDonald, Temporary
Release Committee chairperson Joan Taylor, "Corrections
Officer Fair," [2] and the State of New York (collectively,
"Defendants"). [3] Plaintiff alleges various constitutional
claims pursuant to 42 U.S.C. § 1983. Defendants move to
dismiss Plaintiff's complaint in its entirety.

[2]

Defendants have not, to date, identified the first
name of "Corrections Officer Fair" in their moving
papers, prior motions, or prior correspondence with
this Court.

[3]

Defendant, in his amended complaint of February
15, 2006, named Janet Chow, the director of
the Binding Together work release program, as
a Defendant. Pursuant to my Order of April 18,
2006, the Attorney General, in conjunction with
the U.S. Marshals, attempted to effectuate service

upon Ms. Chow. On May 11, 2006, the Attorney
General reported to me that the Marshals were
unable to effectuate service upon Ms. Chow, as
she resigned from Binding Together in 2003, was
believed to have moved out of the area, and
her whereabouts were unknown. On September
19, 2006, Plaintiff again named Chow as a
Defendant in his Amended Complaint. No service
was effectuated (nor, it appears, attempted). On
September 29, 2006, Plaintiff, in his now-operative
Amended Complaint, did not name Chow as a
Defendant. The Clerk of the Court terminated Janet
Chow as a Defendant on September 29.

In a letter of July 31, 2006, Defendant requested
leave of court to amend his complaint to add
Binding Together. Defendant named Binding
Together as a Defendant in his now-operative
Amended Complaint of September 29, 2006.
No service was effectuated (nor, it appears,
attempted). Accordingly, I now dismiss Binding
Together from this case as a Defendant.

In his amended complaint of February 15,
2006, Defendant also named Parole Officer
"R. Carrington." Service was attempted on
Carrington by the U.S. Marshals on May
10, 2006, but was returned unexecuted. The
Attorney General subsequently informed me that
Carrington died on July 5, 2005. Defendant
did not name Carrington as a Defendant
in subsequent complaints. The Clerk of the
Court terminated Carrington as a Defendant on
September 19, 2006.

In his amended complaint of February 15,
2006, Defendant also named Parole Officer
Mrs. Brewington as a Defendant. Service
was attempted on Brewington by the U.S.
Marshals on May 10, 2006, but was
returned unexecuted. The Attorney General
subsequently informed me that Brewington
is critically ill and on extended leave
from the New York State Division of
Parole. Defendant named Brewington in his
subsequent Complaints, including his now-
operative Amended Complaint of September 29,
2006. No further service was effectuated (nor, it
appears, attempted). Accordingly, I now dismiss
Brewington from this case as a Defendant.

For the reasons articulated below, Defendants' motion is
granted in part and denied in part.

2007 WL 1462217

# I. BACKGROUND

The following facts are taken from Plaintiff's complaint (and construed liberally, as Plaintiff is *pro se* ).

A. *Underlying Facts of Plaintiff's Complaint*
Plaintiff was an inmate, it appears, at Wyoming Correctional Facility in 2001. Plaintiff's Amended Motion Brought Under Fed.R.Civ.P. 60(b), September 29, 2006 ("Pl.Compl.") at 4. [4] In September 2001, according to Plaintiff, he was transferred to a work release facility, apparently Lincoln Correctional Facility, and approved for the Binding Together vocational training work release program. *See generally* Pl. Compl. ¶ 7-8. Plaintiff was "learning a series of computer programs and document lithographics." *Id.* at 4. Plaintiff began the work release program on October 16, 2001. Pl. Compl. ¶ 7. He alleges he was issued a "continuous contractual agreement to participate" in that program. Pl. Compl. ¶ 10.

[4]  This "Amended Motion" serves as Plaintiff's currently operative complaint.

On October 9, 2001, the Appellate Division, Second Department affirmed Plaintiff's criminal conviction. Pl. Compl. ¶ 9; *see also* People v. Dicks, 287 A.D.2d 517 (N.Y.App.Div.2001). On November 13, 2001, according to Plaintiff, his post-conviction motion was denied by the trial court. Pl. Compl. ¶ 11. Around this time, Plaintiff alleges that he advised his corrections counselor, Donna MacDonald, "that he would need to access facilities that would enable him to properly address his legal concerns." *Id.* at ¶ 12. Specifically, Plaintiff alleges that he "constantly asked for time to research ... and prepare an appeal ... to exhaust the remaining state remedies before the 30-day statutory limit," and gave notice to MacDonald and his parole officer, Brewington, of his concerns. [5] *Id.* at ¶¶ 14-15. However, Plaintiff states that about "3½ months after the State Court's denial," [6] "the facility" issued him "a pass for Saturdays to attend the New York Public Library in Manhattan. [7] *Id.* at ¶ 27.

[5]  Plaintiff refers to the fact that at some point, he filed a motion pursuant to N.Y.Crim. Proc. Law § 440, that was denied in 2001. Pl. Mem. Opp. at 33. It seems, although is not entirely clear, that Plaintiff

filed a petition for *habeas corpus* in state court. Plaintiff also suggests that he filed a § 2254 federal habeas corpus petition at some point (apparently, in the Northern District of New York, subsequently transferred to the Eastern District of New York), and that that § 2254 petition was denied for failure to exhaust administrative remedies. Pl. Mem. Opp. at 33; Pl. Compl. ¶ 36.

[6]  It is unclear which denial, exactly, Plaintiff refers to.

[7]  Plaintiff avers, however, that he "did not possess or understand the new technology skills due to a lengthy period of incarceration." Pl. Compl. ¶ 27. Additionally, Plaintiff stated that the hours of 10 a.m. to 4 p.m. was not an "adequate time frame ... to research legal issues and draft up motions," as the law books were "very different compared to the books [Plaintiff] is used to looking at ..." Pl. Compl. ¶ 27.

On March 5, 2002, it appears Plaintiff was terminated from the Binding Together program due, according to Plaintiff, "to being sick." Pl. Compl. ¶ 7. On March 6, 2002, Plaintiff returned to the work release facility. Plaintiff spoke to his counselor, Donna MacDonald, and parole officer, Brewington, and was placed in the Special Housing Unit after MacDonald allegedly became "very unruly." Pl. Compl. ¶¶ 17-18. Plaintiff alleges that he was not allowed access to "pen and paper to challenge anything." *Id* . at ¶ 7.

**\*2**  On March 13, 2002, a hearing was held before the Temporary Release Committee. *Id.* at ¶ 18. MacDonald was not present. *Id.* Plaintiff alleges that he did not receive a "notice of warning, a conference ... or any other ways [sic] that a reasonable person would have to be notified in writing." Pl. Opp. at 9. Plaintiff generally avers that "no one ever inquired about any written documents ... from Binding Together." Pl. Opp. at 13. After the hearing, Plaintiff was placed on 90 days' probation without furloughs. Pl. Compl. ¶¶ 18-19. [8]

[8]  It appears, from a Department of Correctional Services computerized summary of that hearing, that Superintendent Joseph Williams gave final approval to the Temporary Release Committee's decision. Defendants' Motion to Dismiss, Ex. A. Plaintiff's arguments are generally consistent with this apparent fact.

It is not clear whether I may judicially notice and consider that computerized summary on a motion to dismiss. Defendants have not asked me to judicially notice it, nor provided argument in support of that proposition. I will accordingly refrain from considering that summary on this motion.

Plaintiff alleges that (apparently) around this time, he returned to the work release facility, and Ms. MacDonald berated him in front of her colleagues. Pl. Compl. ¶ 22. Plaintiff avers that he requested, at this point, "time to get his criminal appeal done." [9] *Id.* Plaintiff also avers that he submitted a letter around this time in which he requested to "handle research matters for his legal obligations." [10] Pl. Compl. ¶ 24. Plaintiff generally avers that Lincoln Correctional Facility "did not have a law library to help aid in the assistance of pending litigation at [this] time." Pl. Compl. at 15.

[9]     According to Plaintiff, "several months later," a Binding Together counselor did indeed give him permission to "address conducting research in challenging his criminal conviction, as long as [Plaintiff] was able to keep up with the [Binding Together] work ..." Pl. Mem. Opp. at 5.

[10]    Plaintiff avers that at one time, he had a copy of the letter, but "like most of his possessions at Lincoln," it "had been packed away by other people." Pl. Compl. ¶ 23.

Plaintiff also alleges that during their conversation, Ms. MacDonald yelled at him that "no church pass will be given" to Plaintiff. Pl. Compl. ¶ 22. Plaintiff states that he is of the Pentecostal faith. Plaintiff's Opposition to Motion to Dismiss ("Pl.Opp.") at 8. Plaintiff generally states that 25 to 30 individuals at Lincoln were of the Pentecostal faith, but Lincoln did not provide Pentecostal services to those inmates. Pl. Opp. at 23. Plaintiff alleges that previously, he had been allowed to attend worship and counseling services at "Bethel Gospel." Pl. Compl. ¶ 14. "From March [to] April 2002," according to Plaintiff, he "spoke about a various amount of matters," including a "request for a continuous church pass," and specifically alleged that he "asked for a church pass for Sunday Worship Service." *Id.* at ¶ 26, 28. Plaintiff alleges that "[n]o response was given." *Id.* at ¶ 28. Plaintiff states that around this time, there was no [Inmate Grievance Review Committee] "IGRC" box, or "IGRC Office," at Lincoln through which he could file an administrative grievance. *Id.* at ¶ 22.

On April 18, 2002, Plaintiff (according to him) was "suspended from school" (presumably the Binding Together work release program). Pl. Compl. ¶ 29. He claims that "no documents were handed to him ... on this matter." *Id.* When Plaintiff returned to the work release facility, no one was present. *Id.* at ¶ 30. The next day, April 19, Plaintiff went to Binding Together to speak to the director, Janet Chow, who was not present. *Id.* at ¶ 31. Plaintiff was told by another Binding Together counselor to "go home." *Id.* Plaintiff then attended a "loved one's funeral." *Id.*

Subsequently, upon his return to the work release facility, Plaintiff alleges he was placed in the Special Housing Unit "void of any explanation or documentation," because his parole officer, Brewington, had "placed [it] in the computer." Pl. Compl. at ¶ 33. [11] The Temporary Release Committee, which according to Plaintiff, consisted of Chairperson Joan Taylor, Parole Officer Carrington, and Special Housing Unit Officer Michael, held a hearing on April 24, 2002 regarding whether Plaintiff was "out of bounds." Pl. Compl. ¶ 34. Plaintiff avers that "no one ever discussed any factors of what led up to the suspension and how long it is supposed to last." Pl. Mem. Opp. at 18. Plaintiff avers that there was "no substantial proof that Plaintiff traveled out of the state ..." Pl. Mem. Opp. at 19.

[11]    Plaintiff also alleges that when he was placed in the SHU, "his property was packed by someone else ... [m]inus some items." Pl. Compl. at ¶ 33.

**\*3** After that hearing, which Plaintiff avers was recorded on tape, the committee unanimously voted to remove Plaintiff from work release. [12] Pl. Compl. ¶ 34. Plaintiff was subsequently transferred to Riverview Correctional Facility. *Id.* at ¶ 35.

[12]    A copy of a Department of Correctional Services computerized summary of that hearing is appended to Defendant's Motion to Dismiss as Exhibit B. It appears, from reviewing that summary, that Deputy Superintendent Maria Tirone gave final approval to the Temporary Release Committee's decision. Plaintiff's arguments are generally consistent with this apparent fact.

It is not clear whether I may judicially notice and consider that computerized summary on a motion to dismiss. Defendants have not asked me to judicially notice it, nor provided argument

in support of that proposition. I will accordingly refrain from considering that summary on this motion.

Plaintiff avers that he was "supposed to go to his Merit Board" in September 2002, and that he had "all the requirements needed for Merit Board eligibility," but that the Merit Board action "never transpired." Pl. Compl. ¶ 41.

Plaintiff states that while at Riverview Correctional Facility, he did receive access to the law library and filed "several grievances in regards to harassment and unnecessary searches and the damage of property unnecessarily." Pl. Compl. ¶ 13.

B. *Procedural History*
Plaintiff filed his first complaint in this matter on September 22, 2003, before the Honorable Chief Judge Michael Mukasey. Plaintiff subsequently (or concurrently) wrote to the Court to voluntarily dismiss the case. On September 25, 2003, Judge Mukasey granted Plaintiff's request.

On October 20, 2003, Plaintiff appealed the voluntary dismissal to the Second Circuit. On April 19, 2005, the Second Circuit remanded Plaintiff's action to the district court. On May 25, 2005, the district court reopened the action and directed Plaintiff to submit an amended motion pursuant to Fed.R.Civ.P. 60(b). On December 13, 2005, following a request for extension of time, the district court granted Plaintiff's Rule 60(b) motion and directed Plaintiff to submit an amended complaint. On February 15, 2006, Plaintiff submitted an amended complaint. On April 12, 2006, Plaintiff's action was transferred from Judge Mukasey to this Court. On September 19, 2006, Plaintiff amended his complaint again. On September 29, 2006, subsequent to Defendants' motion to dismiss and pursuant to my individual practices, Plaintiff filed the now-operative Amended Complaint. On October 31, 2006, I ordered that Plaintiff be allowed no further amendments.

C. *Plaintiff's Complaint*
Plaintiff alleges three primary causes of action in his Complaint. First, Plaintiff alleges that he was denied substantive and procedural due process at the Temporary Release Committee hearings-both the initial hearing, after which he was placed on 90 days' probation, and the second hearing, after which he was removed from the work release program.

Secondly, Plaintiff alleges that he was denied access to the courts, in that he lost the opportunity to file a N.Y.Crim. Proc. Law § 440 petition (and, although it is unclear, perhaps a 28 U.S.C. § 2254 petition as well) because corrections and work release staff did not grant him authorization to research and prepare the necessary documents to meet his statutory deadline for those petitions.

Third, Plaintiff alleges that he was deprived of his freedom of religion in that corrections staff denied him a pass to attend church services of his particular faith (in Plaintiff's case, the Pentecostal faith).

*4 Plaintiff generally seeks $7 million dollars in actual, punitive, and nominal damages for each of the above alleged constitutional violations against the various defendants.

Regarding his due process claims, Plaintiff also requests to expunge the records of his work release violations. Pl. Compl. at ¶ 14. Plaintiff also requests to be allowed to complete the necessary training program [and] a certificate of some type of acknowledgement for completing the last 60 days of training along with pay." *Id.* Plaintiff additionally requests an order to keep his current job with the City of New York while finishing the necessary training. *Id.*

Regarding his "denial of access" claim, Plaintiff also requests a "written stipulation" agreeing that employees of Lincoln Correctional Facility "hampered the plaintiff from filing timely and necessary appeals to exhaust state remedies in appealing [his] criminal conviction." Pl. Compl. at 15.

Defendants, on October 20, 2006, moved to dismiss Plaintiff's now-operative Amended Complaint.

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party. *See Krimstock v. Kelly,* 306 F.3d 40, 47-48 (2d Cir.2002). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Shakur v. Selsky,* 391 F.3d 106, 112 (2d Cir.2004), *quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Since the plaintiff is the non-movant and proceeding *pro se,* I must construe his papers liberally and "interpret them to raise the

strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (internal citation omitted).

### III. DISCUSSION

Defendants move to dismiss Plaintiff's complaint, in whole and in part, on several grounds. I will address each argument in turn.

A. *Claims Against State of New York*
Defendants move to dismiss Plaintiff's claims against the State of New York. It is well settled that under the Eleventh Amendment, the doctrine of sovereign immunity bars actions for retroactive damages against a state or one of its agencies in federal court absent the state's consent to such suit or an express statutory waiver of immunity. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 97-103 (1984); *Mancuso v. New York State Thruway Auth.,* 86 F.3d 289, 292 (2d Cir.1996); *Santiago v. New York State Dep't of Correctional Services,* 945 F.2d 25 (2d Cir.1991) (civil rights actions against Department of Correctional Services under 42 U.S.C. § 1983 for retroactive damages prohibited by Eleventh Amendment). The State of New York has not so consented to suit in federal court. *Trotman v. Palisades Interstate Park Com.,* 557 F.2d 35, 38-40 (2d Cir.1977). Accordingly, Plaintiff's claims against the State of New York for money damages are dismissed.

**\*5** Additionally, Plaintiff's claims for money damages against the individual defendants in their official capacities are dismissed. *See Davis v. New York,* 316 F.3d 93, 102 (2d Cir.2002), *citing, e.g., Kentucky v. Graham,* 473 U.S. 159, 169 (1985) (claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment).

Plaintiff's claims for prospective injunctive relief are not barred by the Eleventh Amendment-provided, however, that Plaintiff brings those claims against a state official, rather than the state itself. *See Santiago v. New York State Dep't of Correctional Services,* 945 F.2d 25, 32, *citing Ex Parte Young,* 209 U.S. 123 (1908). Plaintiff has named several state officials as Defendants here, and his claims for prospective injunctive relief against those officials are not barred by the Eleventh Amendment. [13] Plaintiff's claims for prospective injunctive relief against the named Defendant State of New York are barred by the Eleventh Amendment, and are

dismissed. *Cf. Flores v. N.Y. State Dep't of Corr. Servs.,* 2003 U.S. Dist. LEXIS 1680, at \*9 (S.D.N.Y.2003) (plaintiff cannot seek an injunction against DOCS directly).

[13]      That said, it should be noted that it is unclear whether the state officials Plaintiff has named here as Defendants have the authority to grant the injunctive relief he seeks.

Thus, the State of New York is dismissed in its entirety as a Defendant in this case.

B. *Personal Involvement of Defendants Williams and Tirone*
Defendants move to dismiss all remaining claims against Superintendent Williams and Deputy Superintendent Tirone (in their personal capacities) for lack of personal involvement in the alleged constitutional violations against Plaintiff.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995), *citing, e.g., Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *see also Scott v. Scully,* 1997 U.S. Dist. LEXIS 12966, at \*9-10 (S.D.N.Y.1997) (Baer, J.). The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Id., citing Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

Defendants argue that Williams and Tirone were supervisory officials at Lincoln Correctional Facility, and involved in Plaintiff's alleged constitutional violations only to the extent that they approved the findings of the Temporary Release Committee when the Committee placed Plaintiff on probation, and subsequently terminated his work release program. Plaintiff does not directly contradict that statement, but avers that "they have to enter their access codes in order for the decision to be processed." [14] Pl. Opp. at 15. Such

"involvement" does not constitute "personal involvement" in alleged constitutional violations under any of the five above-mentioned categories articulated by the *Colon* Court. *See Scott v. Scully,* 1997 U.S. Dist. LEXIS 12966, at \*11 (where Defendant supervisor only affirmed dismissal of plaintiff's grievance, Court granted motion to dismiss based on lack of personal involvement); *see also Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) ("plaintiff's claim for monetary damages ... requires a showing of more than ... linkage in the prison chain of command").

14     Plaintiff also avers that "final approvals for contracts were subject to Superintendent Joseph Williams and or his designee Deputy Superintendent Maria Tirone ..." Pl. Opp. at 15. To the extent that Plaintiff alleges Williams' or Tirone's involvement in the approval of his contract to begin work release, such participation is irrelevant, as Plaintiff alleges no constitutional violations regarding the approval of his work release contract (as opposed to the Temporary Release Committee's later termination of the contract). To the extent that Plaintiff's opposition could be construed to state that Williams or Tirone exercised final approval over the Temporary Release Committee's decisions, such a statement squares with Defendant's averments that Williams and Tirone were not personally involved in the alleged constitutional violations.

**\*6** Additionally, Plaintiff makes no factual allegations that Williams or Tirone were personally involved in Plaintiff's alleged violations of "denial of access to the courts" or free exercise of religion.

Accordingly, all claims against Williams or Tirone are dismissed, and Williams and Tirone are thus dismissed in all capacities as Defendants in this case.

### C. *Claims Against Remaining Defendants*

Plaintiff's remaining claims are for money damages and injunctive relief against Corrections Counselor Donna MacDonald, Temporary Release Committee chairperson Joan Taylor, and "Corrections Officer Fair" in their individual capacities.

### a. *Due Process Claims*

Plaintiff first alleges that he was denied procedural due process at the Temporary Release Committee hearings that ultimately terminated his participation in the work release program. 15

15     Defendants argue that Corrections Counselor MacDonald should be dismissed for lack of personal involvement as well, as although she issued the initial "out of bounds" charge that led to Plaintiff's first Temporary Release Committee hearing, she was not present at the hearing itself.

     It is not clear what role MacDonald played, or was tasked to play, in providing notice to Plaintiff of the charges against him. Additionally, it is unclear what, if any, information (either formal or informal) MacDonald provided to the Temporary Release Committee for its hearings. Construing the *pro se* Plaintiff's allegations liberally, and viewing the facts in the most favorable light, I decline to dismiss the due process claims against MacDonald on this motion to dismiss.

A prisoner has a due process right to a hearing before he may be deprived of a liberty interest. *See Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997). "Prisoners on work release have a liberty interest in continued participation in such programs." *Friedl v. City of New York,* 210 F.3d 79, 84 (2d Cir.2000), *citing Kim v. Hurston,* 182 F.3d 113, 117 (2d Cir.1999); *Tracy v. Salamack,* 572 F.2d 393, 395-96 (2d Cir.1978). An inmate generally must be afforded advance written notice of the charges against him and a written statement of fact findings supporting the disposition and reasons for the disciplinary action taken. *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999). Subject to legitimate safety and correctional goals of the institution, an inmate should also be permitted to call witnesses and present documentary evidence. *Id., citing Wolff v. McDonnell,* 418 U.S. 539, 563-64 (1974).

Regarding the first hearing, Plaintiff claims that he did not receive "notice," a "conference," or "any other ways [sic] that a reasonable person would have to be notified in writing." Pl. Opp. at 9. 16 Plaintiff also claimed that "no one ever inquired about any written documents ... from Binding Together." Pl. Opp. at 13. Regarding the second hearing, Plaintiff claims that he was "suspended from school," with "no documents handed to him," placed in the Special Housing Unit "void of any explanation or documentation," *see* Pl. Compl. ¶¶ 29, 33, and subsequently terminated from work release at a hearing

2007 WL 1462217

where "no one ever discussed any factors of what led up to the suspension and how long it is supposed to last." Pl. Mem. Opp. at 18.

16    Plaintiff also claimed that he could not adequately defend himself at the hearing because he was denied pen and paper while in the Special Housing Unit. *See* Pl. Compl. ¶ 7.

Construing Plaintiff's *pro se* allegations liberally, Plaintiff has stated claims for violations of procedural due process-namely, defective notice, the lack of opportunity to present evidence, and the lack of a statement of reasons-before both hearings that affected his liberty interest in continuing his work release program.[17] Defendants' motion to dismiss those claims is accordingly denied.

17    Defendants also argue that Plaintiff has failed to exhaust his administrative remedies regarding his due process claim. Defendants note that Plaintiff filed an Article 78 petition in state court to challenge his removal from the temporary release program, but failed to obtain personal jurisdiction over defendants due to defective service. *See Dicks v. Williams,* 308 A.D.2d 623 (N.Y.App.Div.2003). Strangely, however, Defendants support their exhaustion argument by citing authority that interprets the statutory procedures for bringing a habeas challenge to a state court conviction. *See Picard v. Connor,* 404 U.S. 270, 275 (1971), *citing* 28 U.S.C. § 2254. At this point in time, I decline to dismiss Plaintiff's due process claim for failure to exhaust administrative remedies.

**\*7** Plaintiff also appears to allege a claim for violations of substantive due process at the second hearing, which terminated his participation in the work release program. Specifically, Plaintiff alleges there was "no substantial proof that Plaintiff traveled out of the state ..." Pl. Mem. Opp. at 19.

A hearing disposition must be supported by "some evidence." *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999), *citing Superintendent v. Hill,* 472 U.S. 445, 455 (1985). Plaintiff essentially alleges that there was no evidence to support the Committee's decision. Although discovery (most obviously, of the tape of the hearing) and a subsequent motion for summary judgment might have obviated Plaintiff's claim, Plaintiff, on this motion to dismiss, has stated a claim for a violation of substantive due process. Defendants'

motion to dismiss Plaintiff's substantive due process claim is accordingly denied.

It is worth noting that discovery, and a subsequent motion for summary judgment, may have shed more light on the merits of Plaintiff's claims. On July 21, 2006, I set a Scheduling Order which provided for discovery by November 15, 2006, and dispositive motions to be filed by January 30, 2007. It appears that neither Plaintiff nor Defendants availed themselves of discovery, or the opportunity to make a motion for summary judgment, before those deadlines.

Should these claims turn out to be true, the state Department of Corrections best rethink their procedures in this area so that what appears at this pleading stage to be a flagrant abuse of constitutional rights is not repeated.

### b. *"Denial of Access to Courts" Claim*
Plaintiff also alleges that he was denied access to the courts and thus lost the opportunity to file post-conviction motions, or appeals of those motions, because corrections and work release staff did not grant him authorization to research and prepare the necessary documents to meet his statutory deadlines.

The constitutional right of access to courts entitles prisoners to either "adequate law libraries or adequate assistance from persons trained in the law." *Tellier v. Reish,* 1998 U.S.App. LEXIS 24479, at *7-8 (2d Cir.1998), *citing Bounds v. Smith,* 430 U.S. 817, 828 (1977). However, the Supreme Court has recognized that prisoners do not have "an abstract, free-standing right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, "meaningful access to the courts is the touchstone." *Id., quoting Bounds,* 430 U.S. at 823. Accordingly, a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance hindered his efforts to pursue a legal claim." *Id.*

Here, Plaintiff has alleged that the facility he was housed in, Lincoln Correctional, did not have a law library. Plaintiff additionally alleges that he asked on multiple occasions for time to research the legal issues relating to his direct appeal and post-conviction motions, notwithstanding his commitments to the work release program, and was denied such additional time. Construing Plaintiff's allegations in their most favorable light, Plaintiff alleges that he lost the opportunity to file a post-conviction motion, or an appeal of that motion, due to this inability to access legal materials. *See Torres v. Viscomi,* 2006 U.S. Dist. LEXIS 72818, at *9

2007 WL 1462217

(D.Conn.2006) ("Inmates must be afforded access to court to file a direct appeal, a petition for writ of habeas corpus or a civil rights action challenging the denial of a basic constitutional right."), citing *Lewis v. Casey,* 518 U.S. at 355.

**\*8** Admittedly, Plaintiffs' allegations are seriously undercut by his statements that he was ultimately given permission to attend the New York Public Library to conduct legal research, and that Binding Together acquiesced to or gave such permission so long as he completed his work release commitments. *See Tellier v. Reish,* 1998 U.S.App. LEXIS 24479, at \*7-8 (affirming grant of summary judgment to defendants on "denial of access" claim where plaintiff was allowed access to library for eleven hours a week). The timing of when exactly Plaintiff was given permission to conduct research, as it relates to Plaintiff's statutory deadlines, is unclear. These, however, are genuine issues of material fact, better left for a motion for summary judgment (which Defendants did not bring).

Defendants' motion to dismiss Plaintiff's denial of access claim is accordingly denied. [18]

[18]    Defendants also argue that Plaintiff has not exhausted his administrative remedies before he brought his "denial of access" and religious freedom claims, as required by the Prisoner Litigation Reform Act for actions regarding prison conditions. *See Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), citing 42 U.S.C. § 1997e(a) ("no action shall be brought ... until such administrative remedies as are available are exhausted"). Plaintiff, however, alleges that the Lincoln facility had no Inmate Grievance Review Committee box, through which he could pursue his administrative remedies. *See* Pl. Compl. ¶¶ 21-22. Plaintiff also alleges that he filed grievances while at Riverside, although it is unclear whether he did so, or which violations he alleged at that time. Pl. Compl. ¶ 13.

    Accordingly, construing Plaintiff's complaint in the most favorable light, I decline at this time to dismiss Plaintiff's claims for failure to exhaust administrative remedies.

    Defendants argue as well that Plaintiff's "denial of access" and religious freedom claims are barred by the statute of limitations. Plaintiff's claims appear to have arisen in March and April of 2002. Plaintiff filed his original complaint in this Court on September 22, 2003, within

the three-year statute of limitations for § 1983 claims. *See Owens v. Okure,* 488 U.S. 235 (1989). Plaintiff subsequently voluntarily dismissed his original complaint. Rather than refiling his complaint, the *pro se* Plaintiff appealed his voluntary dismissal to the Second Circuit, who remanded Plaintiff's action to this Court on April 19, 2005. In accordance with this Court's orders (and extensions of time), Plaintiff filed his Amended Complaint on February 15, 2006-technically outside the three-year statute of limitations.

"A layman representing himself ... is entitled to a certain liberality with respect to procedural requirements." *Mount v. Book-of-the-Month Club, Inc.,* 555 F.2d 1108, 1112 (2d Cir.1977). Accordingly, I decline to dismiss Plaintiff's claims as barred by the statute of limitations here.

### c. *Religious Freedom Claim*

Plaintiff alleges a violation of his constitutional right to free exercise of religion because corrections staff denied him a pass to attend church services of the Pentecostal faith.

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003). To state a claim, the prisoner must "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord,* 467 F.3d 263, 274-75 (2d Cir.2006), citing *Ford v. McGinnis,* 352 F.3d at 591. The defendants then bear the "relatively limited" burden of identifying the legitimate penological interests that justify the impinging conduct. *Salahuddin v. Goord,* 467 F.3d at 275, citing Ford v. McGinnis at 595. "The burden remains with the prisoner to 'show that these [articulated] concerns were irrational.' " *Id., citing Ford v. McGinnis* at 595; *see also Ford* at 588 (prisoners' free exercise claims are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged constitutional violations), *citing Farid v. Smith,* 850 F.2d 917, 925 (2d Cir.1988); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987).

Here, Plaintiff alleges that he was denied the opportunity to attend church services. [19] There appears to be no reason to question that Plaintiff's professed Pentacostal beliefs are "sincerely held." Plaintiff has alleged a substantial burden

2007 WL 1462217

upon those beliefs. *See Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir.1989) ("[P]risoners should be afforded every reasonable opportunity to attend religious services, whenever possible.") True, Plaintiff was denied the "church pass" in part, it appears, due to his own disciplinary violation. However, it is "error to assume that prison officials were justified in limiting [plaintiff's] free exercise rights simply because [plaintiff] was in disciplinary confinement." *Id.* at 570.

19    Plaintiff also appears to contest the facility's failure to provide services particularly designed for the Pentacostal faith. "[I]f those ... individuals in the facility were Muslim ... or [if] plaintiff had been Muslim, then Lincoln Correctional Facility would have made ... an Imam come for Jumah Services." Pl. Opp. at 23.

**\*9** It is entirely possible that after an examination of the facts, Defendants may provide a "legitimate penological interest" for Defendants' actions that rebuts Plaintiff's claim. Such a determination, however, is better left to a motion for summary judgment (which Defendants did not bring here). *See Salahuddin v. Goord,* 467 F.3d at 277, *citing Young v. Coughlin,* 866 F.2d at 570 ("the district court should not have dismissed appellant's First Amendment claim without requiring prison officials to establish the basis for the First Amendment restrictions imposed."). Defendants' motion to dismiss Plaintiff's First Amendment claim for violation of free exercise of religion is denied.

Plaintiff also brings a state law claim pursuant to N.Y. Correct. Law. § 610(3), which provides, in part, that inmates "shall be allowed such religious services and spiritual advice and spiritual ministration from some recognized clergyman of the denomination or church which said inmates may respectively prefer ..." [20] N .Y. Correct. Law. § 610(3) (2007); *see, e.g., Cancel v. Goord,* 278 A.D.2d 321, 322 (N.Y.App.Div.2000); *see also Salahuddin v. Mead,* 2000 U.S. Dist. LEXIS 3932, at \*10-11 (S.D.N.Y.2000) (noting that state free exercise claims are considered in similar manner to federal claims). Defendants' motion to dismiss Plaintiff's state law claim, for the reasons outlined above, is denied as well. [21]

20    It should be noted that Plaintiff did not bring a claim pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), which creates a separate, private right of action for free exercise claims that requires the government

to show a "compelling governmental interest." *See Salahuddin v. Goord,* 467 F.3d at 273-74, *citing* 42 U.S.C. § 2000cc-1 *et. seq.* Some courts, even where plaintiff did not specifically allege the statutory RLUIPA claim, have allowed liberal leave to plaintiff to amend his complaint to include it. *See McEachin v. McGuinnis,* 357 F.3d 197, 199 n. 2, 205 (2d Cir.2004) (noting that "the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim," and instructing the district court on remand to consider allowing plaintiff to amend his complaint and consider appointing counsel to plaintiff to address the resultant statutory legal issues). Here, where Plaintiff has now filed three amendments to his complaint in this Court, I decline at this late juncture to grant Plaintiff leave to amend his complaint to add the statutory claim.

21    It should be noted, although the parties did not brief the issue, that because Plaintiff's state law claim against DOCS officials must be brought in the New York Court of Claims, it is unclear if I may exercise pendent jurisdiction over Plaintiff's claim. *See Cancel v. Mazzuca,* 205 F.Supp.2d 128, 138 (S.D.N.Y.2002) (declining to exercise pendent jurisdiction over N.Y. Correct. Law § 610 claim), *citing* N.Y. Correct. Law. § 24(2) ("Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of [DOCS] shall be brought and maintained in the court of claims as a claim against the state.")

D. *Qualified Immunity*

Defendants also move to dismiss Plaintiff's above-mentioned remaining claims against MacDonald, Taylor, and Fair in their individual capacities for alleged violations of a) due process, b) denial of access to the courts, and c) free exercise of religion on the grounds that Defendants are shielded by qualified immunity.

"The doctrine of qualified immunity protects state actors sued in their individual capacity from suits for monetary damages where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Baskerville v. Blot,* 224 F.Supp.2d 723, 737 (S.D.N .Y.2002), *quoting Harlow v. Fitzgerald,* 457

U.S. 800, 818, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982); *see generally McKenna v. Wright,* 2004 U.S. Dist. LEXIS 725, at *24-25 (S.D.N.Y.2004) (Baer, J.). "Even where a plaintiff's federal rights are well-established, qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights." *Woods v. Goord,* 2002 U.S. Dist. LEXIS 7157, at *35 (S.D.N.Y.2002), *quoting Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d. Cir.1991). Therefore, state officials are shielded by qualified immunity if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001), *quoting Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996).

 **\*10** For the same reasons outlined above that support denial of Defendants' motion to dismiss, I decline to find at this time, as a matter of law, that Defendants' actions did not violate "clearly established law." *Cf. McKenna v. Wright,* 2004 U.S. Dist. LEXIS 725, at *26-27. Regarding the "objective reasonableness" of Defendants' actions, while "the use of an 'objective reasonableness' standard permits qualified immunity claims to be decided as a matter of law," *see Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992), the determination "usually depends on the facts of the case ... making dismissal at the pleading stage inappropriate." *See*

*Woods,* 2002 U.S. Dist. LEXIS 7157, at *35 (citations omitted). Construing the allegations in the *pro se* Plaintiff's complaint in their most favorable light, *see McKenna v.. Wright* at *26, I accordingly decline at this time to dismiss the remaining claims against Defendants on the grounds of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's claims is granted in part and denied in part.

Trial of Plaintiff's remaining claims against MacDonald, Taylor, and Fair in their individual capacities for alleged violations of a) due process, b) denial of access to the courts, and c) free exercise of religion will commence on July 16, 2007, in accordance with prior orders of this Court.

The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1462217

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2001 WL 1217192
United States District Court, N.D. New York.

Louis E. deBROIZE, Plaintiff,
v.
NEW YORK STATE; Central New York Psychiatric
Center; New York State Department of Correctional
Services; New York State Office of Mental Health; Bruce
Bradigan, Individually and as Director of Operations
at Central New York Psychiatric Center, Defendants.

No. 99–CV–0904.
|
Sept. 21, 2001.

**Attorneys and Law Firms**

Norman P. Deep, Esq., Clinton, for Plaintiff.

Eliot Spitzer, Attorney General of the State of New York, Albany, Sean M. Seely, Esq., Assistant Attorney General, Of Counsel.

MEMORANDUM–DECISION AND ORDER

MORDUE, District J.

I. INTRODUCTION

 **\*1** In this case, plaintiff, who is a psychologist employed by the New York State Office of Mental Health ("OMH"), alleges that after he testified on behalf of a New York State corrections officer in a case in which the officer claimed he was intentionally discriminated against by his employer in violation of the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. § 12101 *et seq.,* plaintiff's own employer retaliated against him by removing him from participation in the Forensic Extra Services Program ("FESP"). [1] Defendants filed a motion for summary judgment dismissing plaintiff's complaint on various grounds. Subsequently, in the wake of the Supreme Court's decision in *Bd. of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, ——, 121 S.Ct. 955, 967–68 (2000), which held that lawsuits to recover money damages against states or state agencies are barred by the Eleventh Amendment, defendants moved to dismiss the complaint. Plaintiff opposes this motion but requests that he be afforded an opportunity to amend his pleading in the event the Court dismisses the present action.

[1]  The FESP is a program in which OMH employees, in addition to their regular duties with OMH, visit prisons administered by the New York State Department of Correctional Services ("DOCS") and provide counseling to inmates and DOCS employees. Participants in the FESP program receive additional wages in connection with their additional DOCS duties.

II. FACTUAL BACKGROUND

Plaintiff has been employed as an Associate Psychologist by defendant, the Central New York Psychiatric Center ("CNYPC") since November 1987. Outside of his duties at CNYPC, plaintiff was an adjunct college professor, a private psychotherapist and clinician in the FESP. Plaintiff participated in the FESP from 1993 to 1995 and again from 1997 to 1998. In October 1997, plaintiff testified as an expert witness on behalf of a DOC employee/patient whom he counseled at Midstate Correctional Facility. The employee/patient in question, Keith Muller, a correctional officer formerly employed by DOCS, brought suit pursuant to the ADA alleging that DOCS discriminated against him because of his disability of reactive airway disease, which substantially impaired his major life activities of working and breathing. *See Muller v. Costello,* 997 F.Supp. 299 (N.D.N.Y.1998), *aff'd* 187 F.3d 298 (2d Cir.1999). Muller alleged that when he complained about second-hand smoke in his workplace and asked for duties which would not expose him to this health hazard, DOCS retaliated against him for seeking to enforce his rights under state and federal law, in violation of the ADA. Plaintiff in the present case testified on behalf of Muller at the trial regarding his observations of the environment of the Midstate and other correctional facilities as well as Muller's mental health. The case was submitted to a jury which then returned a verdict in favor of Muller on both the discrimination and retaliation claims.

In March 1998, plaintiff was informed that OMH would not be renewing his FESP contract. When plaintiff questioned his supervisor, Randy Dymond, regarding the decision not to renew his contract, plaintiff alleges Mr. Dymond told him it was a "management" decision and that he had been pleased with plaintiff's performance in the program. Upon further inquiry, defendant Bruce Bradigan, Director of Operations for CNYPC, advised plaintiff that the decision not to renew plaintiff's contract was based on the agency's desire to "give some other people a chance at the [FESP]." Plaintiff alleges that the reason given for his removal from the FESP was pretext, and in fact was an act of retaliation by defendants

for plaintiff's having rendered what he characterizes as "unfavorable" testimony regarding DOCS during the *Muller* trial. To wit, plaintiff alleges that he learned subsequent to his removal from the program that that there were OMH employees participating in the FESP who were less qualified than he and that the participating employees had been asked to work extra hours because of a shortage of clinicians to handle an increased workload.

III. DISCUSSION

A. *Applicable Standards of Review*

 **\*2**  The standards applicable to motions to dismiss are well-settled. On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept the allegations of the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *See Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995). In addition, the Court may not dismiss the complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nettis v. Levitt,* 241 F.3d 186, 191 (2d Cir.2001) (quotation omitted). Therefore, the issue before the Court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995)).

When a defendant moves to dismiss for lack of subject matter jurisdiction, however, a different standard is applied. In considering a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo,* Civil Case No. 98–5793, 1999 WL 187205, at \* 2 (S.D.N . Y. Apr. 5, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings. *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000); *Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998). As the party "seeking to invoke the subject matter jurisdiction of the district court," plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in this case. *Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996).

Here, defendants have not specified the grounds for their motion to dismiss. Consequently, the Court presumes defendants have moved pursuant to both Fed.R.Civ.P. 12(b)

(1) and 12(b)(6) and applies each of the above standards to the appropriate sections of the instant motion.

B. *Eleventh Amendment*

Under the Eleventh Amendment, federal courts generally lack jurisdiction over suits brought by a private party against a state, unless the state has consented to suit or Congress has expressly abrogated the state's immunity. *See Board of Trustees v. Garrett,* 121 S.Ct. at 962 ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54–56 (1996); *Dube v. State Univ. of New York,* 900 F.2d 587, 594 (2d Cir.1990). Eleventh Amendment immunity does not just bar suits that name a state as a defendant; rather, it prohibits a district court from hearing any action brought against a state department or agency, regardless of the relief sought. *See Dube,* 900 F.2d at 594. Claims for money damages brought against state officials in their official capacities are likewise barred by the Eleventh Amendment. *See Rodriguez v.. Weprin,* 116 F.3d 62, 66 (2d Cir.1997); *see also Kostok v. Thomas,* 105 F.3d 65, 69 (2d Cir.1997). After the Supreme Court's decision in *Ex Parte Young,* 209 U.S. 123 (1908), however, it has long been settled that private individuals may sue state officials in their official capacities for prospective injunctive relief without running afoul of the Eleventh Amendment. *See id.*

C. *Plaintiff's ADA Claims*

 **\*3**  In this case, plaintiff asserts claims for monetary and injunctive relief against defendants—the State of New York, OMH, DOCS and defendant Bradigan, a state employee sued in both his personal and official capacities—under the ADA. The State of New York along with OMH and DOCS as state agencies and Bradigan as a state official enjoy full Eleventh Amendment immunity from plaintiff's claims and there has been no evidence presented to the Court which suggests that these defendants have or intend to waive this immunity. Accordingly, all claims for money damages and for injunctive relief against the State of New York, OMH and DOCS must be dismissed. Plaintiff's claim for injunctive relief against Bradigan in his official capacity as Director of Operations at CNYPC survive, however, based upon the *Ex Parte Young* principle. Moreover, the Eleventh Amendment is not a bar to plaintiff's claim for money damages and injunctive relief against defendant Bradigan in his individual capacity.

deBroize v. New York State, Not Reported in F.Supp.2d (2001)
2001 WL 1217192, 22 NDLR P 24

D. *Remaining ADA Claim*

Although the Eleventh Amendment does not preclude plaintiff from suing defendant Bradigan in his official capacity for injunctive relief, or in his individual capacity for money damages as well as injunctive relief, the ADA only prevents disability discrimination by "employers." *See* 42 U.S.C. § 12111(2) (term "covered entity" means employer, employment agency, labor organization, or joint labor-management committee). Individuals may not be sued under the ADA in either their personal or official capacities. *See Menes v. CUNY Univ.,* 92 F.Supp.2d 294, 306 (S.D.N.Y.2000) (collecting cases). Accordingly, plaintiff's remaining ADA claims against defendant Bradigan must also be dismissed.

E. *Leave to Amend*

When a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief. *See Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991). Here, plaintiff did not make a formal cross-motion to amend, but rather, requested the option of repleading in his memorandum of law in opposition to defendants' motion to dismiss. Plaintiff asserts that leave to amend should be granted so he may add claims "pursuant to 42 U.S.C. § 1983 and/or § 504 of the Rehabilitation Act." If plaintiff is referring to the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 which was enacted to secure opportunities for people with developmental disabilities to enjoy the benefits of community living, he has no legal basis to state a claim thereunder against defendant Bradigan. It is well-settled that "individual defendants may not be held personally liable for alleged violations of the ADA or the Rehabilitation Act." *Sutherland v. New York State Dep't of Law,* Civ. Action No. 96–6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) (citing *Coddington v. Adelphi Univ.,* 45 F.Supp.2d 211, 215 (E.D.N.Y.1999); *Harrison v. Indosuez,* 6 F.Supp.2d 224, 229 (S.D.N.Y.1998); *Cerrato v. Durham,* 941 F.Supp. 388, 395

(S.D.N.Y.1996); *Yaba v. Cadwalader, Wickersham & Taft,* 931 F.Supp. 271, 274 (S.D .N.Y.1996)). Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabilitation Act suits. *See id.* (citing *Harrison,* 6 F.Supp.2d at 229; *Lane v. Maryhaven Center of Hope,* 944 F.Supp. 158, 162–63 (E.D.N.Y.1996)). Accordingly, plaintiff's request to amend his complaint to add a claim pursuant to the Rehabilitation Act must be denied. *See Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 76 (2d Cir.1998), *cert. denied,* 525 U.S. 1103 (1999) (where plaintiff is unable to demonstrate that he could amend complaint in manner which would survive dismissal, opportunity to replead is rightfully denied).

**\*4** With respect to plaintiff's request to add a claim pursuant to 42 U.S.C. § 1983, however, in the absence of any details regarding the nature or facts of this proposed claim, the Court cannot state with certainty that plaintiff would be unable to sustain an action against defendant Bradigan pursuant to this statute as a matter of law. *See e.g., Hafer v. Melo,* 502 U.S. 21, 25–31 (1991) (state officers subject to § 1983 liability for damages in their personal capacities even when conduct in question relates to their official duties).

VI. CONCLUSION

Based on the foregoing, defendants' motion to dismiss all claims currently pending against them in connection with the present action is GRANTED, defendants' motion for summary judgment is DENIED as moot, and plaintiff is hereby GRANTED leave to amend his complaint to add a cause of action against defendant Bradigan in his individual capacity pursuant to 42 U.S.C. § 1983. The Court orders that any such amended pleading must be filed and served within thirty (30) days.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 1217192, 22 NDLR P 24

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.